**FILED**
**SEPTEMBER 17, 2019**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 31755-2-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | OPINION PUBLISHED IN PART |
| | ) | |
| KEVIN ARTHER PETERS, | ) | |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, J. — Charged with raping and drugging his three minor children for years, Kevin Peters pleaded guilty to two counts of first degree rape of a child and one count of first degree child molestation. At sentencing, the trial court sentenced him to a term of total confinement of 216 months to life, lifetime community custody, and dozens of community custody conditions.

Mr. Peters limits his challenges on appeal to a dozen community custody conditions, none of which were objected to in the trial court. In the published portion of this opinion, we touch on reasons why such conditions might not be reviewable for the first time on appeal. For the conditions that are eligible for review, we identify those that

require modification and two that could benefit from clarification. The case is remanded

for the entry of a judgment and sentence revised in accordance with the opinion.

FACTS

Because Kevin Peters pleaded guilty to the three charges, we need not go into the

disturbing allegations of his years-long sexual abuse of his three children.

At sentencing, the trial court imposed the high end of the standard range and 33

community custody conditions requested by the State, 9 of which were identified as

mandatory. Mr. Peters made no objection to the conditions at sentencing. He appeals.

ANALYSIS

For the first time on appeal, Mr. Peters challenges 12 of the community custody

conditions imposed by the sentencing court.

The Sentencing Reform Act of 1981 (SRA)[1] provides that when a court sentences

a person to a term of community custody, the court shall impose conditions of

community custody. RCW 9.94A.703. The act identifies certain conditions as

mandatory, others as waivable, and others as discretionary. *Id.* Among discretionary

conditions that the court is authorized to impose are orders that an offender "[c]omply

with any crime-related prohibitions." RCW 9.94A.703(3)(f). "Crime-related

prohibitions" are orders "prohibiting conduct that directly relates to the circumstances of

the crime for which the offender has been convicted." Former RCW 9.94A.030(13)

---

[1] Chapter 9.94A RCW.

2

(2008). They can include prohibitions that address some factor of the crime that might cause the convicted person to reoffend. *State v. Hai Minh Nguyen*, 191 Wn.2d 671, 684-85, 425 P.3d 847 (2018). The State need not establish that the conduct being prohibited directly caused the crime of conviction or will necessarily prevent the convict from reoffending. *Id.* at 685.

Challenges to sentencing conditions that were not raised in the trial court may not be eligible for review, given RAP 2.5(a)'s general requirement for issue preservation. *State v. Casimiro*, 8 Wn. App. 2d 245, 249, 438 P.3d 137, *review denied*, 445 P.3d 561 (2019). Appellate courts have authority to consider claims of manifest constitutional error that were not raised in the trial court, provided that an adequate record exists to consider the claim. *Id.* (citing RAP 2.5(a)(3); *State v. McFarland*, 127 Wn.2d 322, 333, 899 P.2d 1251 (1995)). Additionally, in *Bahl*, our Supreme Court recognized that the non-rule based exception for illegal or erroneous sentences created by *State v. Ford*, 137 Wn.2d 472, 477-78, 973 P.2d 452 (1999), provides a basis for some unpreserved challenges to community custody conditions. *State v. Bahl*, 164 Wn.2d 739, 744, 193 P.3d 678 (2008).

Recent decisions have clarified that the non-rule based exception allowing review of unpreserved sentencing errors is limited by the concern for sentence conformity that is the basis for the exception. As explained in *State v. Blazina*:

3

We did not want to "permit[ ] widely varying sentences to stand for no reason other than the failure of counsel to register a proper objection in the trial court." Errors in calculating offender scores and the imposition of vague community custody requirements create this sort of sentencing error and properly fall within this narrow category. We thought it justifiable to review these challenges raised for the first time on appeal because the error, if permitted to stand, would create inconsistent sentences for the same crime and because some defendants would receive unjust punishment simply because his or her attorney failed to object.

182 Wn.2d 827, 833-34, 344 P.3d 680 (2015) (alteration in original) (citations and internal quotation marks omitted) (quoting *Ford*, 137 Wn.2d at 478). *Blazina* made clear that the exception for illegal or erroneous sentences does not apply when the challenged sentence term, had it been objected to in the trial court, was one that depends on a case-by-case analysis. *Id.* at 834. And courts never need consider claims of error—even constitutional error—that were invited or waived. *Casimiro*, 8 Wn. App. 2d at 249 (citing *State v. Studd*, 137 Wn.2d 533, 545-49, 973 P.2d 1049 (1999) (invited error); *State v. Mierz*, 127 Wn.2d 460, 468, 901 P.2d 286 (1995) (waived)).

Even if an alleged error is preserved, it may not be ripe for review on its merits under a prudential ripeness test adopted by our Supreme Court in *Bahl*. It is ripe "'if the issues raised are primarily legal, do not require further factual development, and the challenged action is final.'" *State v. Cates*, 183 Wn.2d 531, 534, 354 P.3d 832 (2015) (citations and internal quotation marks omitted) (quoting *State v. Sanchez Valencia*, 169 Wn.2d 782, 786, 239 P.3d 1059 (2010)). Further factual development will be required if

the condition would only violate the constitution if misapplied, but could be constitutionally applied depending on the circumstances of the enforcement. *Id.* at 535.

Before refusing to review a preenforcement challenge on direct appeal, a reviewing court must also consider the hardship to the offender. *Id.* at 834-35. In *Sanchez Valencia* and *Bahl*, our Supreme Court held that the risk of hardship will justify review before factual development if the challenged condition immediately restricts an offender's conduct upon release from prison. *Cates*, 183 Wn.2d at 535-36.

To summarize, for an objection to a community custody condition to be entitled to review for the first time on appeal, it must (1) be manifest constitutional error or a sentencing condition that, as *Blazina* explains, is "illegal or erroneous" as a matter of law, and (2) it must be ripe. If it is ineligible for review for one reason, we need not consider the other.

We review conditions of community custody for abuse of discretion, reversing such conditions only if they are manifestly unreasonable. *State v. Padilla*, 190 Wn.2d 672, 677, 416 P.3d 712 (2018). The imposition of an unconstitutional condition is manifestly unreasonable. *Sanchez Valencia*, 169 Wn.2d at 792.

I.    THE CHALLENGE TO THE LIFETIME NO-CONTACT ORDER IS NOT MANIFEST CONSTITUTIONAL ERROR NOR IS IT ILLEGAL OR ERRONEOUS AS A MATTER OF LAW

Mr. Peters challenges "Other Condition" 1, that he have no contact with his children for life. He argues that the lifetime no-contact order violates his fundamental

constitutional right as a parent to raise his children without government interference. *See State v. Corbett*, 158 Wn. App. 576, 598, 242 P.3d 52 (2010). The condition is ripe for review because it already restricts his actions. But it is not manifest constitutional error nor is it illegal or erroneous as a matter of law.

The alleged error raises a constitutional issue. Community custody conditions interfering with a parent's fundamental constitutional right to parent may be imposed, but they "must be 'sensitively imposed' so that they are 'reasonably necessary to accomplish the essential needs of the State and public order.'" *In re Pers. Restraint of Rainey*, 168 Wn.2d 367, 377, 229 P.3d 686 (2010) (quoting *State v. Warren*, 165 Wn.2d 17, 32, 195 P.3d 940 (2008)). In the case of a no-contact order, the order, its scope, and its duration must all be reasonably necessary. *Id.* at 381. These are "fact-specific" inquiries. *Id.* at 382.

In *Rainey*, the Supreme Court struck a lifetime no-contact order in part and remanded for consideration of whether it was "reasonably necessary." But there—unlike here—the defense made a timely objection to the condition in the trial court. *Id.* at 373. The condition was struck and the case remanded because there was no indication that Rainey's argument against its scope and duration had been considered by the trial court. *Id.* at 382.

If there was error in Mr. Peters's case it is not manifest because actual prejudice is not shown. *See McFarland*, 127 Wn.2d at 333. Victim impact statements considered by

6

the sentencing court included a statement by Mr. Peters's oldest child that "I hate your guts and I wish you were dead." Clerk's Papers (CP) at 80. His middle child stated he "does not want his dad to get out (of prison) and hurt other people." CP at 87. His youngest child stated, "He should be in jail for longer than he will live," and "I hate you." CP at 78. In the CASA's[2] statement at the sentencing hearing, she described Mr. Peters's actions toward his children as "pervasive and protracted," "creat[ing] for them a world of fear," and that his actions were going to leave the children "vulnerable, and dysfunctional, I believe, for the rest of their lives." Report of Proceedings[3] (Sept. 19, 2012; Oct. 23 & 30, 2012) (RP)at 35. At the plea hearing and at sentencing, defense counsel treated it as given that a lifetime no-contact order would protect the children. *See* RP at 7, 59 (stating that Mr. Peters "knows he can never have contact with [his children]").

Because the evidence in the record is sufficient to support a reasonable necessity for a lifetime no-contact order, the condition is not illegal or erroneous as a matter of law. Since Mr. Peters did not object (and even conceded, through counsel, that the order would be imposed) he is not entitled to appellate review.

---

[2] Court appointed special advocate.

[3] All "RP" references are to the verbatim transcript of proceedings that includes the plea hearing, an October 23, 2012 motion hearing, and sentencing. Mr. Peters's untimely appeal was accepted after the Washington Supreme Court ordered that the mandate be withdrawn and that this court allow for the filing of a late appeal. *State v. Peters*, Order, No. 95146-2 (Wash. Apr. 4, 2018).

No. 31755-2-III
*State v. Peters*

II.     OTHER CONTACT RESTRICTIONS DESIGNED TO PROTECT THIRD PARTIES

Mr. Peters challenges five community custody conditions whose apparent purpose

is to protect others from a risk of future offenses by Mr. Peters.  He challenges the

following conditions:

> Do not reside in a location within 888 feet of a Community Protection
> Zone.

CP at 105 ("Other Condition" 13).

> Have no contact with Minors unless approved by your assigned Community
> Corrections Officer, and if applicable, Sex Offender Treatment Provider.

*Id.* ("Other Condition" 3).

> Do not go to places where children congregate (i.e. schools, playgrounds,
> parks, etc.).

*Id.* ("Other Condition" 10).

> Do not enter into any romantic relationships without the prior approval of
> your supervising Community Corrections Officer, and if applicable, Sex
> Offender Treatment Provider.

*Id.* ("Other Condition" 7), and

> Notify any employer(s) regarding the nature of your sex offenses.

CP at 106 ("Other Condition" 16).

*Community protection zone condition*

We begin with the "community protection zone" condition, "Other Condition" 13.

Among mandatory conditions for offenders "sentenced under RCW 9.94A.507 for an

offense listed in RCW 9.94A.507(1)(a)," against a "victim . . . under eighteen years of

8

age," is to "prohibit the offender from residing in a community protection zone." RCW 9.94A.703(1)(c). The condition applies to Mr. Peters, since his convictions for first degree rape are for an offense listed in RCW 9.94A.507(1)(a). "Community protection zone" is defined by the SRA to mean "the area within eight hundred eighty feet of the facilities and grounds of a public or private school." Former RCW 9.94A.030(8).

Mr. Peters rightly contends that as drafted, the condition requires him to reside 888 feet from the protection zone, not the school, thereby enlarging the mandated distance between his residence and a school from 880 feet to 1,768 feet—to one-third mile, rather than one-sixth mile. The State takes the position that the condition is a flawed articulation of the mandatory condition rather than an attempt to broaden it. It agrees that the condition should be corrected on remand, suggesting it be revised to say "'do not reside within a community protection zone, as defined in RCW 9.94A.030(6).'" Br. of Resp't at 20.

Mr. Peters also argues that the condition is unconstitutionally vague, since it is unclear whether a college or university is a "school" for this purpose. "A statute is unconstitutionally vague if it (1) does not define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is proscribed, or (2) does not provide ascertainable standards of guilt to protect against arbitrary enforcement." *State v. Johnson*, 4 Wn. App. 2d 352, 364, 421 P.3d 969, *review denied*, 192 Wn.2d 1003, 430 P.3d 260 (2018). A community custody condition "is not unconstitutionally

vague merely because a person cannot predict with complete certainty the exact point at which his actions would be classified as prohibited conduct." *City of Seattle v. Eze*, 111 Wn.2d 22, 27, 759 P.2d 366 (1988).

Constitutional vagueness challenges to conditions that restrict an offender's conduct immediately, or immediately upon release from prison, are ripe for review. *Bahl*, 164 Wn.2d at 751-52. And if "public or private school" is unconstitutionally vague, then the sentence term is illegal or erroneous as a matter of law and can be raised for the first time on appeal.

"In deciding whether a term is unconstitutionally vague, the terms are not considered in a 'vacuum,' rather, they are considered in the context in which they are used." *Id.* at 754. The fact that a term is defined by a relevant statute bolsters the conclusion that it is not unconstitutionally vague. *Hai Minh Nguyen*, 191 Wn.2d at 680. "Private school" and "public school" are both defined by the SRA. *See* Former RCW 9.94A.030(36), (37). Both are defined with reference to Title 28A RCW, which deals with "common schools," meaning "schools maintained at public expense in each school district from kindergarten through the twelfth grade." *Id.*; RCW 28A.150.020. Particularly because this is a mandatory condition that uses the statutorily defined term "community protection zone," whose definition relies, in turn, on the statutorily defined terms "private school" and "public school," the condition is not vague.

We accept the State's concession that the condition misstates the mandatory condition provided by RCW 9.94A.703(1)(c) and remand with directions to modify it to conform to the mandatory condition.

*Conditions addressing contact with children and minors*

We turn next to the two conditions involving "minors" and "children": "Other Condition" 3, that Mr. Peters have no contact with minors unless approved by his community custody officer (CCO),[4] and "Other Condition" 10, that he not go to places where children congregate, with illustrative examples. Mr. Peters challenges the conditions as unconstitutionally vague. He also argues that if "minors" is understood to include individuals over age 16, it is not crime related because his victims were younger.

Washington courts have addressed challenges to conditions requiring offenders to stay away from places where children congregate in at least six published decisions[5] and in many more unpublished decisions. Judge Lee's concurrence/dissent in part in *State v. Wallmuller*, 4 Wn. App. 2d 698, 704-06, 423 P.3d 282 (2018) provides a thorough review

---

[4] Almost all of the challenged conditions that require approval or authorization of Mr. Peters's CCO also require the approval or authorization of "if applicable," his "Sex Offender Treatment Provider." CP at 105-06.

[5] In chronological order, *State v. Riles*, 135 Wn.2d 326, 957 P.2d 655 (1998), *abrogated on other grounds by Sanchez Valencia*, 169 Wn.2d 782; *State v. Irwin*, 191 Wn. App. 644, 652, 364 P.3d 830 (2015); *State v. Magana*, 197 Wn. App. 189, 201, 389 P.3d 654 (2016); *State v. Norris*, 1 Wn. App. 2d 87, 95, 404 P.3d 83 (2017), *aff'd in part, rev'd in part on other grounds sub nom. Hai Minh Nguyen*, 191 Wn.2d 671; *Johnson*, 4 Wn. App. 2d 352; and *State v. Wallmuller*, 4 Wn. App. 2d 698, 704, 423 P.3d 282 (2018), *review granted*, 192 Wn.2d 1009, 432 P.3d 794 (2019).

of Washington courts' treatment of this sort of condition, beginning with the Supreme Court's rejection of a vagueness challenge in *Riles*, followed by Division One's decision in *State v. Irwin*, 191 Wn. App. 644, 364 P.3d 830 (2015), which struck such a condition as unconstitutionally vague but signaled modifications that would avoid vagueness problems, followed by decisions of the three divisions, many unpublished, which took *Irwin*'s reasoning in different directions. We will not provide our own review and analysis of Washington decisions because the issue of the constitutionality of such provisions is presently before the Washington Supreme Court, which accepted review of Division Two's decision in *Wallmuller*. Oral argument was heard on May 14, 2019.

We reaffirm this division's decision in *Johnson*, in which we rejected a vagueness challenge to a condition that required the defendant to "'[a]void places where children congregate,'" followed by an illustrative list of places. 4 Wn. App. 2d at 360 (alteration in original). For the reasons explained in *Johnson*, we reject Mr. Peters's vagueness challenge to the similar condition imposed on him. As in *Johnson*, we will direct the court on remand to modify the condition to specify that the venues to be avoided were those where "children under 16 congregate."[6]

---

[6] *Johnson* rejected the contention that use of the word "children" was confusing, pointing out that in the context of a sex offense, the term "children" refers to individuals under the age of 16. *Id.* at 361 (citing RCW 9A.44.073-.089). This court nonetheless directed the trial court to add the qualifier "under 16" because the statutory definition might not be readily apparent to someone outside the criminal justice system. *Id.* at n.3.

Mr. Peters challenges the condition that he have no contact with minors unless approved by his CCO as vague because an ordinary person would not know whether "minors" means persons under 16 years old, 18 years old, or 21 years old. In support of his argument, Mr. Peters points to RCW 66.44.270, which defines the term "minor" in the context of furnishing alcohol to minors, and RCW 46.61.5055(6), which penalizes driving under the influence with a minor passenger.

As previously discussed, in deciding whether a term is unconstitutionally vague, we consider it in the context in which it is used. In *Johnson*, we held that in the context of a sex offense, the meaning of the term "children" is determined from provisions of the SRA addressing such offenses against children. 4 Wn. App. 2d at 361 (citing RCW 9A.44.073-.089). In the case of "minor," here, the meaning of the term is determined from statutes dealing with the sexual exploitation of children (chapter 9.68A RCW), not from statutes dealing with driving or furnishing alcohol. Chapter 9.68A RCW defines "minor" as meaning "any person under eighteen years of age." Former RCW 9.68A.011(4) (2002). While the relevant definition is clear, we will direct the court on remand to specify that Mr. Peters is to "have no contact with minors under 18 unless approved . . ." because the statutory definition might not be readily apparent to someone outside the criminal justice system.

Mr. Peters also argues that unless "minors" means children under age 16, it is not crime related because none of his victims was over 16 years old. A condition need not

13

exactly mirror the means and methods of the charged crime to be crime related, however. *E.g.*, *State v. Kinzle*, 181 Wn. App. 774, 785, 326 P.3d 870 (2014) (court prohibited the defendant from dating women who have children, even though his victims were the children of social contacts whom he did not date). The Supreme Court's decision in *Riles*, on which Mr. Peters relies, does not support his position. In that consolidated appeal, the court struck a condition prohibiting contact with minors that was imposed on a defendant convicted of raping a 19-year-old woman but affirmed the same condition imposed on a defendant convicted of raping a 6-year-old boy. 135 Wn.2d at 347-50. The court's consistent reasoning was that a restriction on contact with minors can be imposed where, as here, the defendant's victim was a minor.

*Romantic relationships*

Mr. Peters contends that requiring him to obtain the prior approval of his CCO before entering into a romantic relationship is invalid for three reasons: he argues that "romantic relationship" is vague, the condition is not crime related, and giving veto power over his adult relationships violates his federal and state constitutional rights to form intimate relationships. The State concedes that the term "romantic relationships" is vague but asks that rather than strike the condition, we direct the trial court to substitute "dating relationship." In *Hai Minh Nguyen*, the Supreme Court held that "dating relationship" is not unconstitutionally vague. 191 Wn.2d at 683.

We agree that "romantic relationships" is vague.[7] Mr. Peters accepts the State's proposed solution to the vagueness problem that "dating relationships" be substituted. He argues that his other two challenges remain. With the vagueness problem solved, we turn to whether Mr. Peters's remaining challenges are eligible for review.

The crime relatedness of the condition is not eligible for review. The Supreme Court emphasized in *Hai Minh Nguyen* that we review sentencing conditions for an abuse of discretion, and "[a] court does not abuse its discretion if a 'reasonable relationship' between the crime of conviction and the community custody condition exists"; stated differently, "there must be 'some basis for the connection.'" 191 Wn.2d at 684 (quoting *Irwin*, 191 Wn. App. at 658-59, 657). We review the factual basis for a trial court's implicit finding that a condition is crime related using a "substantial evidence" standard. *State v. Padilla*, 190 Wn.2d 672, 683, 416 P.3d 712 (2018).

As this court recently pointed out in *Casimiro*, where there is no objection to community custody conditions in the trial court, there is no reason for the parties or the court to create a record on the relationship between the crime and the conditions imposed. 8 Wn. App. 2d at 249. We are not required to consider an argument that a sentencing

---

[7] We previously came to that conclusion in *State v. Dickerson*, No. 32899-6-III, slip op. at 2, 9-10 (Wash. Ct. App. May 26, 2016) (unpublished) https://www.courts.wa.gov/opinions/pdf/328996.unp.pdf. The unpublished opinion has no precedential value, is not binding on any court, and is cited only for what we deem its persuasive value.

condition is not crime related when the offender had the opportunity to raise the contention in the trial court, creating a record, and failed to do so. *See id.*

The delegation of authority to a CCO to approve dating relationships is not manifest constitutional error nor is it illegal or erroneous as a matter of law. In *State v. Autrey*, 136 Wn. App. 460, 468, 150 P.3d 580 (2006), this court held that imposing a prior approval condition as it relates to adult sexual contact was sufficiently related to two defendants' sexual offenses against children, explaining that "the offender's freedom of choosing even adult sexual partners is reasonably related to their crimes because potential romantic partners may be responsible for the safety of live-in or visiting minors." *Id.* The court also observed that if, after release, the supervision as applied "appears intrusive as appellants fear, they may seek a sentencing condition review." *Id.* at 469.

Mr. Peters argues that *Autrey*'s "broad holding has been eroded over time," citing *Kinzle* as upholding a narrower condition requiring that the defendant not "'date women nor form relationships with families who have minor children, as directed by the supervising Community Corrections Officer.'" Br. of Appellant at 17 (quoting *Kinzle*, 181 Wn. App. at 785). The decision in *Kinzle* involved a narrower restriction, but the court did not state or imply disagreement with *Autrey*. Mr. Peters's implicit acceptance of *Kinzle* demonstrates that a prior approval condition for dating relationships can be exercised constitutionally. And *cf. Hai Minh Nguyen*, 191 Wn.2d at 685 (citing *Kinzle*

with approval; a prohibition against forming relationships with women who have minor

children was crime related because it "aimed to prevent the defendant from

reoffending"). Because the condition can be constitutionally applied depending on the

circumstances, Mr. Peters is not entitled to review.

### *Notification of employers*

Mr. Peters challenges the requirement that he notify any employers regarding the

nature of his offenses. He challenges the condition as vague and as not crime related.

We decline to address his challenge to the condition's crime relatedness because he failed

to raise the issue in the trial court.

In *Kinzle*, this court rejected a challenge that an employment-related condition was

unconstitutionally vague and overbroad because the defendant failed to argue or establish

that his challenge to the condition was ripe for review. 181 Wn. App. at 785-86. The

same is true here.

Further factual development is required because the employer notification

condition can be constitutionally applied. In addressing a constitutional challenge to the

sex offender registration statute,[8] 25 years ago, our Supreme Court held that

dissemination of information about an offender's crimes was not punishment in violation

of the ex post facto provisions of the United States and Washington Constitutions

---

[8] RCW 9A.44.130.

because the information would be disseminated where there was evidence of the offender's dangerousness and the information would be limited in content and scope to counteract the danger presented by the offender. *State v. Ward*, 123 Wn.2d 488, 500-04, 869 P.2d 1062 (1994). The same reasoning supports a community custody condition requiring employer notification that is motivated by concerns for public safety. In *Casimiro*, this court even found support for an employer notification provision in RCW 9.94A.703(2)(b) and (3)(d). 8 Wn. App. 2d at 251.

The condition does not present a risk of hardship that justifies review before factual development. If Mr. Peters decides to seek employment following his release from prison and cannot agree with his CCO on the employer notification required, he can seek review at that time. It appears unlikely that review will ever be required, however. Mr. Peters's source of income in and after 2005 has been Social Security disability benefits based on traumatic brain injuries he suffered as a child and later work-related injuries. CP at 67. If he was disabled from employment when he was in his 30s and 40s, it is doubtful he will look for employment upon his release from prison at age 59 or older. The condition is not ripe for review.

III.    THE CONDITION PROHIBITING THE POSSESSION AND USE OF "SEXUALLY EXPLICIT MATERIALS" IS NOT UNCONSTITUTIONALLY VAGUE

Mr. Peters challenges the condition prohibiting him from accessing, using or possessing "sexually explicit materials" unless authorized by his CCO as constitutionally vague and not crime related.  We decline to review his challenge to crime relatedness.

Our Supreme Court has held that the term "sexually explicit" is not constitutionally vague.  In *Bahl*, the defendant challenged a condition that prevented him from frequenting "'establishments whose primary business pertains to sexually explicit or erotic material.'" 164 Wn.2d at 758.  The Supreme Court rejected his contention that "sexually explicit" was vague, finding it to mean, based on dictionary definitions, "'clearly expressed sexual' materials or materials that are unequivocally sexual in nature"—a meaning enabling a person of ordinary intelligence to understand what is proscribed.  *Id.* at 759.  The fact that the term "sexually explicit" is defined in RCW 9.68.130(1) was found by the court to bolster its conclusion that, in the context used, the term was not unconstitutionally vague.  *Id.* at 760.

While *Bahl* involved a restriction on frequenting certain establishments, the Supreme Court recently had occasion in *Hai Minh Nguyen* to discuss its application to a condition prohibiting the access, use, or possession of sexually explicit materials. 191 Wn.2d at 680-81.  The court held that in the context of using and possessing materials,

"persons of ordinary intelligence can discern 'sexually explicit material' from works of art and anthropological significance." *Id.*

Mr. Peters attempts to distinguish *Hai Minh Nguyen* as involving a sentencing condition that expressly tied "sexually explicit material" to its statutory definition. But the court's decision in *Hai Minh Nguyen* did not turn on the express reference to the statutory definition. And the condition in *Bahl* did not refer to the statutory definition at all. Mr. Peters's challenge fails under *Bahl* and *Hai Minh Nguyen.*

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder having no precedential value shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

IV.  THE CONDITION REQUIRING PLETHYSMOGRAPH TESTING REQUIRES CLARIFICATION

Mr. Peters challenges "Other Condition" 9, that he "[s]ubmit to Plethysmograph testing as directed" because it does not include language that the testing is only permitted within the context of treatment. CP at 105. "Trial courts may require sex offenders to undergo plethysmograph testing as part of a treatment program imposed under RCW 9.94A.120(9)(c)(iii)." *Riles*, 135 Wn.2d at 352. "However, a sentencing court may not order plethysmograph testing unless it also requires crime-related treatment for sexual deviancy. Unlike polygraph testing, plethysmograph testing does not serve a general

monitoring purpose. It is only useful within the context of a comprehensive evaluation or treatment process." *Id.*

The State concedes that plethysmograph testing cannot be ordered outside the context of treatment. Rather than strike the condition, however, it asks that we follow the approach of *State v. Johnson*, 184 Wn. App. 777, 781, 340 P.3d 230 (2014) and affirm the condition but clarify that the CCO's scope of authority is limited to ordering plethysmograph testing for the purpose of sexual deviancy treatment and not for monitoring purposes. Mr. Peters accepts the concession but asks that we require the court to clarify the condition on remand. We will require clarification on remand.

V.    THE CHALLENGE TO THE CONDITION REQUIRING SUBMISSION TO HOME VISITS IS NOT RIPE FOR REVIEW

Mr. Peters challenges the condition requiring him to "[s]ubmit to Home Visits to monitor compliance with supervision. Home Visits include access for the purpose of visual inspection of all areas you live, or have exclusive/joint control or access." CP at 105. He argues the condition is unconstitutional under the Fourth and Fourteenth Amendments to the United States Constitution.

The same challenge to a substantially similar home visit condition was rejected by our Supreme Court in *Cates*, in which the court held the challenge was not ripe for review. 183 Wn.2d at 535-36. Mr. Peters acknowledges *Cates*, but asks that we hold that if and when the State wishes to enforce the condition by demanding that he submit to

a search, the State should first be required to return to court and obtain permission of the superior court.

Mr. Peters's proposal would require us to ignore the Supreme Court's analysis in *Cates* of why the risk of hardship presented by a home visit condition is insufficient to justify review of the challenge before it is factually developed. *Cates* states:

> Compliance here does not require Cates to do, or refrain from doing, anything upon his release until the State requests and conducts a home visit. Cates will not "suffer significant risk of hardship" if we decline to review the merits at this time.

183 Wn.2d at 536 (quoting *Sanchez Valencia*, 169 Wn.2d at 790).

The home visit condition does not give Mr. Peters's CCO the right to search Mr. Peters's home on an inadequate basis over Mr. Peters's objection. It requires Mr. Peters to "submit" to a home visit—thus framed, if he believes the CCO lacks an adequate basis, he can refuse and test the enforcement of the condition.[9]

---

[9] Mr. Peters cites an unpublished decision of this court that observed—in the context of penile plethysmograph testing—that a challenge is faced by "an individual who is compelled to engage in an invasive procedure and who faces contempt for refusing to comply" and that "[a]n appeal as a matter of right after the invasive procedure could be a hollow remedy." Br. of Appellant at 27 (quoting *In re Det. of Herrick*, No. 69993-8-I, slip op. at 8 n.21 (Wash. Ct. App. Apr. 3, 2017) (unpublished) http://www.courts.wa.gov/opinions/pdf/699938.pdf). But in that case, which involves the distinguishable contexts of penile plethysmography and remedies following a finding of contempt, the State followed the procedure Mr. Peters asks us to require—it filed a motion and obtained an order requiring the testing. It should also be noted that even in those distinguishable contexts, the decision pointed out that Mr. Herrick had alternatives to submitting to plethysmograph testing and then pursuing the "hollow remedy" of a direct appeal.

VI.     TWO OF THE DRUG-RELATED CONDITIONS REQUIRE CLARIFICATION

Finally, while Mr. Peters concedes that restrictions related to substance abuse would qualify as crime related in his case, he contends that three drug-related conditions imposed by the court are unconstitutionally vague.

The first of the three challenged conditions, "Other Condition" 22, states, "Do not possess Drug Paraphernalia." CP at 106. Mr. Peters cites *Sanchez Valencia* as support for a vagueness challenge to the condition*,* but one of the problems with the condition imposed in *Sanchez Valencia* was that it did not use the term "drug paraphernalia," which is a well-known defined term in the Uniform Controlled Substances Act.[10] Instead, it prohibited possession of what the court characterized as a "much broader" category of items: "any paraphernalia" usable for ingesting or processing controlled substances or facilitating their sale or transfer. *Sanchez Valencia*, 169 Wn.2d at 794. Because the condition in this case uses the well known and much narrower term "drug paraphernalia," the condition is not unconstitutionally vague. *See id.* at 795 (Johnson, J.M., concurring) ("On remand, the sentencing court can easily correct its error by changing the prohibition on 'paraphernalia' to 'drug paraphernalia.'").

The second of the three conditions, "Other Condition" 23, states, "Do not associated [sic] with known abusers/sellers of Illegal and prescribed Drugs." CP at 106. We reject Mr. Peters's argument that use of the word "known" is confusing. This court

_____

[10] RCW 69.50.102.

recently held that community custody conditions prohibit knowing misconduct, and using the term "known"—referring to the knowledge of the offender—makes the condition clearer. *In re Pers. Restraint of Brettell*, 6 Wn. App. 2d 161, 170, 430 P.3d 677 (2018). The condition *is* problematic in going so far as to prohibit Mr. Peters from associating with a pharmacist, a "known . . . seller[ ]" of "prescribed Drugs." It requires clarification.

As Mr. Peters points out, in a prior unpublished decision of this court, we suggested the following wording where a condition motivated by the same concern required clarification:

> [Do not] associate with persons involved in the unlawful use, sale, and/or possession of controlled substances.

*State v. Martin*, No. 34037-6-III, slip op. at 5 (Wash. Ct. App. May 4, 2017) (unpublished), https://www.courts.wa.gov/opinions/pdf/340376_unp.pdf. (The unpublished opinion has no precedential value, is not binding on any court, and is cited only for what we deem its persuasive value.).

The last of the three conditions, "Other Condition" 24, states, "Do not enter areas identified by your Community Corrections Officer as Drug Locations." CP at 106. As framed, the condition does not treat "Drug Locations" as having meaning independent of the discretion of the CCO. By giving Mr. Peters's CCO unfettered authority to designate prohibited spaces, the condition is susceptible to arbitrary enforcement. *Cf. Magana*, 197 Wn. App. at 201. Mr. Peters points out that in our unpublished decision in *Martin*, we

24

provided the following suggested language for a flawed condition attempting to address the same concern:

> [Do not] enter into or remain in areas where controlled substances are being unlawfully sold/purchased, possessed, and/or consumed.

*Martin*, No. 34037-6-III, slip op. at 5.

We remand to the trial court for modification or clarification of "Other Conditions" 3, 7, 8, 10, 13, 23, and 24. For the convenience of the trial court on remand, we repeat our directions or the parties' suggestions for revised wording:

> For "Other Condition" 3, dealing with contact with minors, we direct the court to modify the condition to specify that Mr. Peters is to "have no contact with minors under 18 unless approved . . . ."

> For "Other Condition" 7, dealing with prior approval of romantic relationships, the State proposed, and Mr. Peters accepted its proposal, that "dating relationships" be substituted for "romantic relationships."

> For "Other Condition" 9, dealing with plethysmograph testing, the court should clarify that the CCO's scope of authority is limited to ordering plethysmograph testing for the purpose of sexual deviancy treatment and not for monitoring purposes.

> For "Other Condition" 10, dealing with places where children congregate, we direct the court to modify the condition to specify that the venues to be avoided are those where "children under 16 congregate. . . ."

> For "Other Condition" 13, dealing with community protection zones, the State proposed that the condition be revised to say, "Do not reside within a community protection zone, as defined in RCW 9.94A.030(6)."

> For "Other Condition" 23, dealing with "known abusers/sellers," Mr. Peters has suggested substituting, "Do not associate with persons involved in the unlawful use, sale, and/or possession of controlled substances."

25

Finally, for "Other Condition" 24, dealing with "drug locations," Mr. Peters has suggested substituting, "Do not enter into or remain in areas where controlled substances are being unlawfully sold/purchased, possessed, and/or consumed."

_____
Siddoway, J.

WE CONCUR:

_____
Pennell, A.C.J.

_____
Korsmo, J.