# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| THE STATE OF WASHINGTON,<br><br>Respondent,<br><br>v.<br><br>RYAN MCCRADY,<br><br>Appellant. | No. 86555-2-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

BIRK, J. — The jury convicted Ryan McCrady of rape of a child in the first degree, rape of a child in the second degree, and molestation of a child in the first degree, all committed against his girlfriend's daughter, K.K. McCrady now asserts errors concerning the time allowed for jury selection, evidence admitted under ER 403 and ER 404(b), and also alleges his community custody conditions violate his fundamental parental rights. We remand for resentencing for the court to conduct an on-the-record analysis concerning McCrady's fundamental parental rights in relation to his community custody conditions. Otherwise, we affirm.

I

McCrady first argues the trial court violated his right to a fair and impartial jury by "cutting off voir dire based on an unreasonable time limit." The State responds that McCrady failed to show both an abuse of discretion and any

prejudice. We conclude the trial court did not abuse its discretion in limiting time during voir dire.[1]

A

The State charged McCrady with rape of a child in the first degree, rape of a child in the second degree, and child molestation in the first degree, all committed against K.K.

On January 4, 2024, the trial court held a hearing to discuss the jury questionnaire, jury selection, and other scheduling issues. On January 8, 2024, the trial court reviewed responses from the juror questionnaire and struck individuals for hardship. The court began with 120 potential jurors and, after hardships, 72 potential jurors remained.

The trial court allowed individual questioning of the remaining jurors, limited to two to three minutes per juror for individual questioning. The court stated that for-cause challenges were not excluded from time and explained, "You get your time. You spend it how you want. If you want to focus on one person to try and strike for cause, that's your use of time."

The parties conducted three panels of voir dire. The first panel began on January 9, 2024. As the individual questioning began, the trial court stated it would

---

[1] The State also argues McCrady waived his objection because he failed to use all his peremptory challenges, and thus "create[ed] a presumption that he was satisfied with the jury." "[I]f a party allows a juror to be seated and does not exhaust their peremptory challenges, then they cannot appeal on the basis that the juror should have been excused for cause." State v. Talbott, 200 Wn.2d 731, 747-48, 521 P.3d 948 (2022). However, McCrady is not appealing the denial of a for-cause challenge. Instead, he argues that the trial court's "unreasonable time limit" on voir dire violated his right to a fair and impartial jury. Thus, McCrady did not waive his appeal on this claim.

allow each side two minutes. After the individual questioning, the court then allowed the parties to question the panel as a group. Before the group session, the trial court stated "we'll do 30 minutes, 15 minutes apiece for voir dire, start with the State. And then you can use all 15, you just get the block of time. Or you can do 10 and then five, however you want to divide it. But you each get 15 minutes a side." The court clarified that responses to a challenge for cause would not count as part of the time. However, after the individual questioning of the second panel and before the group questioning, the trial court increased the time to 20 minutes per side.

During the group questioning of the second panel, McCrady asked, "Is there anyone here who would have difficulty listening to the testimony while remaining fair and impartial to the both sides?" Jurors 53, 55, 60, 61, 62, 63, 68, 76, 78, and 135 raised their hands. McCrady then asked, "[W]ho among you think that in order for a case to reach this point, in order for this case to have reached this point, . . . something probably happened, and that [McCrady] probably did something wrong?" Jurors 53, 56, 61, 64, 74, and 78 raised their hands. In the remaining time, defense counsel questioned juror 55, 56, and 60. After questioning juror 60, and with two remaining minutes, McCrady asked the panel to indicate "who feels like they are concerned about their ability to be fair to both sides of the case." Three jurors—62, 76, and 78—answered affirmatively. McCrady questioned juror 62 and 78 before time ran out. The trial court explained the trial schedule and asked whether any juror had a concern. Juror 62 and 78 expressed their concerns regarding the schedule.

3

Outside the presence of the jury, the trial court stated it was inclined to excuse jurors 62 and 78 for hardship, and the parties agreed. McCrady moved to excuse juror 55 for cause, and the trial court denied the motion. McCrady also moved to excuse jurors 56 and 60, which the trial court granted. McCrady moved to excuse juror 76 and explained,

> And the last juror is—I guess we're left in a position where juror 76 raised her hand to my sort of catch-all question at the at the end, you know, "we've talked to you a lot, does anyone feel like they don't think they can be a fair and impartial juror?" And juror 76 raised her hand, but I did not get a chance to talk with her about that. So I think we are left in a position of her having expressed actual bias, and no follow-up as to what—as to whether or not she could set that aside.

The trial court agreed to bring juror 76 in for individual questioning and stated, "I want to keep this thing moving along, we're running up against the clock, and I don't want to get in trouble. But I am concerned, as well, because of that last minute raise of the card." The trial court gave each side a minute and a half for questioning.

Before questioning juror 76, the trial court asked McCrady if he had any other for-cause challenges to make and defense counsel engaged in an off-the-record colloquy. The judge asked for a response because he was "running up against a union contract for the Clerk's Office." McCrady indicated a request to speak to several additional jurors,

> [Defense Counsel]: Okay. And, so I guess, sort of similarly, there are several jurors who expressed actual bias in response to [defense's] two questions, having difficult—thought they couldn't be impartial—impartial, excuse me, while listening to the testimony in this case. That—and we didn't talk to several of those jurors to follow up. Jurors 53, 61, 62, we will now follow up with 68. We spoke to 60, 55. Sorry.

THE COURT: We're not. I thought we're bringing 78—or, is it 68 we're bringing in?

[Defense]: No, I apologize.

THE COURT: 76.

[Defense]: 78.

THE COURT: Seventy—

[Defense]: Excuse me, 76 is correct. So jurors 53, 61, 62, 68, 64, 63, and 56.

[Defense]: I think—

[Defense]: And I apologize, 64 is gone. But those others raised their hands to that question, and we didn't speak with them.

And then the jurors who raised their hand in answering the question, you know, in order for this case to have reached this point, something probably happened and [McCrady] probably did something wrong. The jurors we didn't speak with are 61, 74, 53, and 56.

The State argued that it was not objecting to bringing juror 76 in for additional questioning, but "other than that, I—as I said, I would have liked more time, as well. I don't know if—it's essentially conducting a brand-new voir dire." The trial court stated,

Yeah, I'm concerned about that. You had your opportunity to use your time as you saw fit, and delve into those issues. I did not see the questions themselves to lead to automatic disqualification by just simply raising the card. And so it could have been looked into further, and that was the election of counsel.

I agree—and those questions occurred early enough in the voir dire to where there was sufficient time to inquire.

But with 76, because of the nature of the question, because it was the last minute, we'll allow that to happen.

After questioning juror 76, McCrady moved to excuse the juror for cause, and the trial court granted the motion.

McCrady then moved to "extend voir dire for both parties with respect to the remaining jurors who answered affirmatively to the two questions I posed earlier that we have not gotten to." The trial court denied the motion because "it was the time frame—you had more than sufficient time to delve into those issues."

The next day, McCrady requested that the trial court not impose "hard time limits" on the individual questioning. The trial court agreed to extend individual questioning but asked that the parties be efficient during their questioning. The court explained,

> I've been trying to keep it moving along that way we're not getting into the group time because—and from my perspective, some of the questioning has been longer than it should be for purposes of the individualized questioning, and that's cutting into your time. And so, you know, that's part of the reason why I denied the motion yesterday was because from my perspective, looking at the totality of how it all went, the reason why we have the crunch was because of the way the questioning happened with the individuals, in part, as well as how the strategy that was undertaken for purposes of the group setting.
>
> And so I'm planning on keeping—I'm letting you know that that's my perspective. I'll apply the same kind of standards with respect to time, but I'd ask that you'd be a little more efficient then if you're concerned. I'm trying to give you a little bit of leeway when I see there's one who I have a concern for cause.

After questioning the third panel, the parties exercised peremptory challenges. Relevant on appeal, the final panel included jurors 53, 55, 63, 64, 68, and 74. The court released juror 64 during trial. Juror 55 became an alternate and did not deliberate. Thus, the jury included four jurors who responded to McCrady's

6

inquiries at the start of the group questioning of the second panel, and who were not further questioned about their responses.

The jury found McCrady guilty of rape of a child in the first degree, rape of a child in the second degree, and child molestation in the first degree.

The trial court sentenced McCrady to an indeterminate sentence of 216 months to life and sentenced him to lifetime community custody. McCrady appeals.

B

Both the United States and Washington State Constitutions provide a right to trial by an impartial jury, which "requires a trial by an unbiased and unprejudiced jury, free of disqualifying jury misconduct." State v. Boiko, 138 Wn. App. 256, 260, 156 P.3d 934 (2007); see U.S. CONST. amend. VI; CONST. art. I, § 21. "The failure to provide a defendant with a fair hearing violates minimal standards of due process." Id.

A trial court has considerable discretion in conducting voir dire. State v. Munzanreder, 199 Wn. App. 162, 175, 398 P.3d 1160 (2017). "The trial judge is afforded considerable discretion in determining how many questions the parties may ask and how the questions should be worded." In re Pers. Restraint of Lord, 123 Wn.2d 296, 308, 868 P.2d 835 (1994). This discretion is afforded to the trial court because it is best able to ensure that the voir dire process is effective for seating an impartial jury. Munzanreder, 199 Wn. App. at 175. A trial court abuses its discretion when it bases its decision on untenable grounds or untenable reasons. Id. " 'The primary purpose of voir dire is to give a litigant an opportunity

to explore the potential jurors' attitudes in order to determine whether the jury should be challenged.' " Id. (quoting Lopez-Stayer v. Pitts, 122 Wn. App. 45, 51, 93 P.3d 904 (2004)). "The test is whether the court permitted a party to ferret out bias and partiality." Id.

For example, in State v. Brady, 116 Wn. App. 143, 148, 64 P.3d 1258 (2003), this court concluded the trial court abused its discretion by "altering the planned time for juror questioning without allowing the attorneys an opportunity to adjust to the change." The trial court gave an ambiguous warning about shortening voir dire time and then eliminated completely a second questioning period. Id. at 147. All parties objected, highlighting that the court had provided an expectation of more time for questioning, and defense counsel noted they had saved several topics for the second period. Id. at 146.

Trial courts must facilitate the parties' opportunity to ferret out bias during jury selection. And, this may require that the trial court be willing to deviate from anticipated time limits when it becomes evident there is a possibility of bias among prospective jurors that cannot adequately be discovered in those time limits. Cf. id. at 147 (concluding the trial court's eliminating defendant's second opportunity to talk with jurors prejudiced the defendant when the case had an issue of bias regarding racial overtones). But, a claim of inadequate ability to discover bias must be evaluated in the entire context of jury selection. See State v. Bell, 26 Wn. App. 2d 821, 836-838, 529 P.3d 448 (2023) (detailing the steps the trial court took throughout the jury selection process to ascertain whether requiring jurors to wear face masks during the COVID-19 pandemic prejudiced the defendant).

Here, the trial court provided the parties with a sufficient opportunity to ferret out potential bias and partiality. The trial court summoned 120 potential jurors. The parties worked together to craft an extensive juror questionnaire that satisfied the State, McCrady, and the trial court. During discussion of the jury questionnaire,[2] the court referenced certain questions, such as:

> [H]ave you ever been the victim of a sexual assault or child abuse as one question? And then, have you, a close—or has a close friend or family member, to the best of your knowledge, ever been the victim of a sexual assault or child molestation? I mean—or excuse me, sexual abuse or child abuse, we'll keep that language similar.
> . . . .
>       . . . [D]o you have religious or philosophical views that may cause you to feel uncomfortable sitting as a juror in a criminal case involving allegations of sexual assault or child abuse? . . . .
> . . . .
>       . . . [H]ave you ever been accused of sexual assault or child molestation? . . . .
> . . . .
>       . . . . Has a close friend or family member ever been accused of sexual assault or child abuse?

The trial court granted several dozen individual interviews outside the presence of other venire jurors. The trial court granted more time for individual questioning of juror 76 when they indicated bias at the end of McCrady's voir dire time for the second panel. The trial court allowed McCrady to extend beyond his allotted two minutes to individually question certain jurors for panels one and two. After the parties had received the questionnaire responses, jury selection took approximately two days.

---

[2] The parties did not include the full jury questionnaire in the appellate record. However, McCrady attached a sample juror questionnaire to his trial memorandum, which included the question, "Is there any reason that you can think of that would make it difficult for you to sit on a jury in a case involving an accusation of an attempted sex offense where the alleged victim is a child?"

Both parties were fully involved in the process, received written questionnaire answers, and asked questions designed to expose bias and to ensure that jurors would reach a verdict based on the evidence presented at trial and on the court's instructions on the law.

McCrady argues that the differences in how the trial court in Brady limited time and how the court here limited time are differences that do not matter because both courts limited the voir dire process. However, this court indicated in Brady it might not be an abuse of discretion if the trial court had reduced questioning time in the second questioning period. Id. at 147. Here, the trial court did the opposite of the trial court in Brady by both clearly setting expectations for the time allowed for jury selection and extending time for questioning from 15 to 20 minutes for the second and third voir dire panels. In addition, the parties had the benefit of extensive written questionnaire answers, and, in the second panel, time to follow up with those jurors expressing concern.

In the whole context of jury selection, the trial court allowed adequate inquiry for the parties to ferret out bias. Therefore, we hold that the trial court did not abuse its discretion when apportioning time for voir dire questioning.

II

McCrady argues the trial court abused its discretion in admitting evidence that McCrady had one-on-one talks with Z.K., K.K.'s sister, in her room. We conclude McCrady waived his claim of error because he did not timely object.

The State presented evidence that McCrady committed the charged crimes against K.K. while purportedly having private talks with her in her bedroom. The

10

State called K.K. to testify that the first incident with McCrady began with him talking with her one-on-one on her bed.  During this talk, McCrady told K.K. she had " 'fantasi[es]' " about him.  K.K testified subsequent incidents began with similar unscheduled conversations in her bedroom about her " 'having fantasies' " about McCrady.  K.K. also testified about one incident where McCrady began with a similar one-on-one conversation in the living room.

The State also called as a witness, Z.K.  The State elicited Z.K.'s testimony about a disclosure that K.K. had made to her describing McCrady's abuse.  The State also elicited Z.K.'s testimony that McCrady would have one-on-one talks with her in her bedroom on her bed.  After the prosecutor had asked whether he had such talks and where they occurred, McCrady objected and requested a sidebar.  The State proffered that the testimony would show that McCrady would talk with Z.K. in her room on the bed and topics would consist of "pondering what [Z.K] must have slept like when she was in her mom's stomach, . . . when Mom was pregnant with [Z.K.].  And topics about periods and how they worked."  McCrady argued that the evidence was not relevant to any of the charges and was extremely prejudicial.

On direct examination of Z.K., the State inquired into McCrady's talks with Z.K.:

> Q.    I'm going to ask you a little bit about—about talks.  Are you—did [McCrady] ever have any talks with you, like one-on-one with you?
>
> [Z.K.]  Yes.
>
> Q.    And where would those talks happen?
>
> A.    In my room.

11

Q.    In your room?  And where in your room?

A.    On the bed.

[DEFENSE COUNSEL]: And, objection.  I would ask for a sidebar.

McCrady did not object to the question about McCrady having private talks with Z.K., nor to his having those talks in her room.  Outside the presence of the jury after McCrady's objection, McCrady principally addressed the anticipated content of the talks: "Even if the State—even if it were relevant, it is extremely prejudicial.  These, . . . sort of conversations about . . . what she would have been sleeping like when she was in her mother's stomach [and] [t]alking to her about her period."

After the State's proffer, McCrady then added that "even if the Court limits this evidence, the jury will, of course, assume that, like, these talks are similar because the State has used the exact same language."  However, McCrady had not initially objected to Z.K.'s testimony that the talks occurred and never moved to strike that testimony.  "The appellate court may refuse to review any claim of error which was not raised in the trial court."  RAP 2.5(a).  We do not review claims of error resulting from a failure to object to admissibility of witness testimony at the trial court.  State v. Perez–Cervantes, 141 Wn.2d 468, 482, 6 P.3d 1160 (2000).  Thus, we conclude that McCrady waived this claim on appeal.

Even if McCrady had not waived this claim, we would not conclude the trial court abused its discretion.  McCrady does not challenge the trial court's interpretation of ER 404(b).  We may then review the trial court's admission of evidence under ER 404(b) for an abuse of discretion.  State v. Foxhoven, 161

12

Wn.2d 168, 174, 163 P.3d 786 (2007).  To properly admit evidence of prior misconduct under ER 404(b), the trial court must

> "(1) find by a preponderance of the evidence that the misconduct occurred, (2) identify the purpose for which the evidence is sought to be introduced, (3) determine whether the evidence is relevant to prove an element of the crime charged, and (4) weigh the probative value against the prejudicial effect."

State v. Gresham, 173 Wn.2d 405, 421, 269 P.3d 207 (2012) (quoting State v. Vy Thang, 145 Wn.2d 630, 642, 41 P.3d 1159 (2002)).  There is a presumption that evidence of prior misconduct is inadmissible, and it is the burden of the party seeking to introduce such evidence to satisfy the first three factors.  Id at 420.  "This analysis must be conducted on the record."  State v. Arredondo, 188 Wn.2d 244, 257, 394 P.3d 348 (2017).

Based on the trial court's ruling, the evidence that McCrady had private talks with Z.K. was not admitted to establish that he intended to sexually abuse Z.K., but to show that he created an environment where private talks with the girls was a common occurrence.  In sustaining McCrady's objection to evidence of the content of his talks with Z.K., but concluding the evidence received to that point had not been objectionable, the court explained,

> The specific evidence that you—and instances that you're trying to elicit, I do find is unfairly prejudicial.  It may become—it's one of those situations, again, where the—a door may become opened, but I don't think it's been opened thus far with respect to this issue with respect to [Z.K.]  So I'm not going to allow the testimony about specific things that he talked about with her because I think the jury could draw an unfair conclusion from that.
>
> That said, I don't find that—I do find that it's both irrelevant and not prejudicial with what's come out thus far with respect to there being talks because that shows a common thing that's going on, the

13

access that is occurring within this house to have conversations with the girls, either individually and individualized settings.

McCrady argues that the evidence was not relevant to prove an element of the crimes charged, but, as the trial court observed, the evidence was probative of access and therefore probative of his opportunity to commit the charged acts against K.K. " 'Two necessary components' for the commission of sex crimes 'are access and control,' and developing trust is necessary to the 'grooming process.' " State v. Crossguns, 199 Wn.2d 282, 295, 505 P.3d 529 (2022) (quoting BASYLE J. TCHIVIDJIAN, PREDATORS AND PROPENSITY: THE PROPER APPROACH FOR DETERMINING THE ADMISSIBILITY OF PRIOR BAD ACTS EVIDENCE IN CHILD SEXUAL ABUSE PROSECUTIONS, 39 AM. J. CRIM. L. 327, 364, 368 (2012) (footnotes omitted)). Here, assuming Z.K.'s testimony was subject to analysis under ER 404(b), it was probative for a permissible purpose. And, we note that the State never pursued questioning or argument that might suggest that McCrady intended to commit criminal acts against Z.K. Even if McCrady had timely objected or moved to strike, we would conclude the court did not abuse its discretion by admitting the challenged evidence under ER 404(b).

III

McCrady argues that under ER 403, the trial court abused its discretion in admitting evidence that McCrady expressed disapproval of K.K. wearing a choker necklace. The State responds McCrady waived his objection to the evidence, or alternatively, that the evidence was relevant to prove an element of the charged offense. We conclude McCrady did not waive his claim and the trial court did not abuse its discretion.

14

J.K., K.K.'s mother, testified that McCrady had opinions about what the girls wore. The State asked that J.K. elaborate, McCrady objected under ER 403, and the trial court overruled the objection. J.K. testified that McCrady had said that "whores wear chokers." Outside the presence of the jury, McCrady argued that evidence of him stating that whores wear chokers was neither probative nor relevant, and it was "incredibly prejudicial."

The record shows that McCrady adequately objected in the trial court. On direct examination, the State asked J.K.,

> I'm going to ask you a little bit more about [McCrady]'s interaction with [Z.K.] and [K.K.]. You talked about that he would have liked to have had a stronger role in disciplinary— in disciplining the girls. Did he have any other areas of interest where he wanted to help guide? And let me give you an example, for example, anything about what the girls wore?

A    He did

Q    And tell me about that.

[Defense]:    I'm going to object under 403.

THE COURT:    Overruled.

. . . .

Q    Did he have any concerns about clothing items or items that [K.K.] wore?

A    He did. It was—leggings were not a suitable article of clothing and choker.

Q    What about the choker?

A    It was—it was not suitable. It—

Q.    What did [McCrady] say about the choker?

A    That—I don't—

15

Q      It's okay.

A      That whores wear chokers.

Q      Did he say this in front of [K.K.]?

A      He said it to her.

McCrady objected directly after the State sought to elicit what statements he might have made about what K.K. might have worn. Thus, McCrady properly raised a timely objection to the introduction of the statements, and the court's ruling on their admissibility was preserved for review. See RAP 2.5(a); Perez–Cervantes, 141 Wn.2d at 482.

However, the trial court acted within its discretion in concluding that the evidence had some probative value not substantially outweighed by unfair prejudice. When the trial court properly interprets ER 404(b), we review the court's decision to admit evidence for an abuse of discretion. Foxhoven, 161 Wn.2d at 174. "Discretion is abused if it is exercised on untenable grounds or for untenable reasons." Id. (quoting Thang, 145 Wn.2d at 642).

" 'Relevant evidence' is . . . 'evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.' " State v. Cecil, 34 Wn. App. 2d 569, 586, 571 P.3d 1255 (2025) (quoting ER 401). "Even if relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." Id. (citing ER 403). "Evidence is unfairly prejudicial when it is more likely to create an emotional response from a jury instead of a rational decision." Id.

To prove child molestation in the first degree, the State had to prove beyond a reasonable doubt that McCrady had "sexual contact" with K.K.  RCW 9A.44.083.  " 'Sexual contact' means any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party or a third party."  RCW 9A.44.010(13).  Contrary to McCrady's assertion, trial testimony indicating his disapproval of what K.K. wore, and telling her that "whores wear chokers," is probative of whether he sexualized interactions with K.K., and in turn, the gratification component of the charged conduct.

Thus, we hold that the trial court did not abuse its discretion under ER 403 by admitting the challenged evidence.

IV

McCrady argues cumulative error violated his due process right to a fair trial.  Cumulative error may warrant reversal, even if each error standing alone would otherwise be considered harmless.  State v. Weber, 159 Wn.2d 252, 279, 149 P.3d 646 (2006).  Combined, the errors must have denied the defendant a fair trial.  State v. Greiff, 141 Wn.2d 910, 929, 10 P.3d 390 (2000).  However, the doctrine does not apply where the errors are few and have little or no effect on the outcome of the trial.  Id.  Here, reversal is not required as there were no errors.

V

Lastly, McCrady argues the trial court imposed sentencing conditions that violate his fundamental right to parent.  The State contends McCrady invited such error.  We conclude remand is necessary for the trial court to make findings

17

addressing how the community custody conditions are sensitively imposed in consideration of McCrady's fundamental right to parent.

At sentencing, McCrady requested that he be allowed to have contact with his minor son and noted that there were three family members whom he would request be allowed to supervise the visits. The trial court ordered McCrady "not to have any contact with any minor without the supervision of a responsible adult who has knowledge of this conviction and order. He is allowed to meet with his son as long as it's supervised." The State asked for clarification regarding the community custody conditions related to minors, and the trial judge stated it was "[n]o contact without supervision," and he "followed the language that was proposed of 'without the supervision of a responsible adult who has knowledge of this conviction and order.' "[3]

McCrady challenges three of his community custody conditions: (1) that he "[h]ave no direct or indirect contact with minors, without supervision of a responsible adult who has knowledge of this conviction [and] order"; (2) that he "not hold any position of authority or trust involving minors"; and (3) that "[f]or the maximum term of life years [sic], [McCrady] shall have no contact, direct or indirect, in person, in writing, by telephone, or through third parties, with . . . [a]ny minors without supervision of a responsible adult who has knowledge of this conviction."

---

[3] In the State's presentence statement, the prosecutor requested no contact with K.K., and no contact with "any minor without the supervision of a responsible adult who has knowledge of this conviction and order." The State reasserted this recommendation at sentencing by requesting that the court impose the condition of "no contact with minors without supervision of a responsible adult who is aware of the charges and convictions in this case."

The State argues McCrady invited this error by "affirmatively propos[ing] to the trial court that McCrady be allowed to contact his son under supervision of three people." "The invited error doctrine is meant to prohibit a party from 'setting up an error at trial and then complaining of it on appeal.' " State v. Kelly, 4 Wn.3d 170, 194, 561 P.3d 246 (2024) (internal quotation marks omitted) (quoting In re Pers. Restraint of Breedlove, 138 Wn.2d 298, 312, 979 P.2d 417 (1999)). The doctrine requires affirmative actions to be taken to contribute to the error. Id. at 194-95. Courts consider whether a party "affirmatively assented to the error, materially contributed to it, or benefited from it." State v. Momah, 167 Wn.2d 140, 154, 217 P.3d 321 (2009).

Here, McCrady did not object to the community custody conditions impacting his right to parent or the lifetime no-contact order beyond his request that three certain people be allowed to supervise his visitation with his child. However, McCrady did not affirmatively contribute to the trial court's neglect to consider on the record the imposition of these conditions. See Momah, 167 Wn.2d at 145 (concluding defendant invited error when he did not object because the court "carefully considered" the defendant's rights on the record when balancing defendant's right to an impartial jury). Thus, we hold McCrady did not invite error as to the challenged community custody conditions.

While McCrady did not invite error, he does raise this error for the first time on review. Generally, this court does not consider an issue raised for the first time on appeal. RAP 2.5(a). "[F]or an objection to a community custody condition to be entitled to review for the first time on appeal, (1) it must be manifest

constitutional error or a sentencing condition that . . . is 'illegal or erroneous' as a matter of law, and (2) it must be ripe." State v. Peters, 10 Wn. App. 2d 574, 583, 455 P.3d 141 (2019) (quoting State v. Blazina, 182 Wn.2d 827, 833, 344 P.3d 680 (2015)).

The sentencing conditions limit McCrady's ability to contact his child without supervision, thus implicating his fundamental right to raise his child and any future children. State v. Corbett, 158 Wn. App. 576, 598, 242 P.3d 52 (2010) ("Parents have a fundamental right to raise their children without State interference."). Therefore, McCrady establishes both that this issue affects his constitutional rights and that he suffered actual prejudice.

The trial court has the authority to impose crime-related prohibitions as a condition of sentence. RCW 9.94A.703(3)(f); State v. Warren, 165 Wn.2d 17, 32, 195 P.3d 940 (2008). "[T]he imposition of crime-related prohibitions is necessarily fact-specific." In re Pers. Restraint of Rainey, 168 Wn.2d 367, 374-75, 229 P.3d 686 (2010).

We review sentencing conditions for abuse of discretion. Warren, 165 Wn.2d at 32. This remains the standard even where the condition interferes with a fundamental constitutional right, such as the relationship between parent and child. Rainey, 168 Wn.2d at 374. However, limitations on constitutionally protected conduct must be "narrowly tailored and directly related to the goals of protecting the public and promoting the defendant's rehabilitation." State v. Bahl, 164 Wn.2d 739, 757, 193 P.3d 678 (2008). As such, a sentencing condition that infringes on this fundamental constitutional right may be upheld only if the condition

20

is reasonably necessary to accomplish the essential needs of the State and public order, and the condition must be "sensitively imposed." Warren, 165 Wn.2d at 32. Because the State has a compelling interest in preventing harm and protecting children, Corbett, 158 Wn. App. at 598, "[t]he fundamental right to parent can be restricted by a condition of a criminal sentence if the condition is reasonably necessary to prevent harm to the children." State v. Ancira, 107 Wn. App. 650, 654, 27 P.3d 1246 (2001).

Here, the court did not conduct an on-the-record analysis of whether the challenged community custody conditions were reasonably necessary to accomplish the State's essential needs or were imposed sensitively to the constitutional rights at stake. See State v. Reedy, 26 Wn. App. 2d 379, 394-95, 527 P.3d 156 (remanding in the absence of a record demonstrating the conditions infringing defendant's parental rights were sensitively imposed, and narrowly tailored to reasonably accomplish the essential needs of the State), review denied, 1 Wn.3d 1029, 534 P.3d 798 (2023). Specifically, the sentencing court did not acknowledge McCrady's fundamental right to parent or address whether the conditions were reasonably necessary to prevent harm to his child or any future children. State v. Torres, 198 Wn. App. 685, 690, 393 P.3d 894 (2017) (the trial court did not make a record of its reasons for the no-contact order so this court was unable to discern the reasoning from the limited information presented); State v. Peters, 10 Wn. App. 2d at 583-84 (the order, scope, and duration of a no-contact order are a "fact-specific" inquiry).

"[T]he imposition of crime-related prohibitions is necessarily fact-specific and based upon the sentencing judge's in-person appraisal of the trial and the offender." Rainey, 168 Wn.2d at 374-375. In imposing the conditions, the trial court did not address McCrady's fundamental right to parent. Nor did the court explain, on the record, whether the conditions were reasonably necessary to achieve the State's compelling interest in preventing harm. We remand for the trial court to consider on the record the essential needs of the State and public order, the impact of the two community custody conditions and the no-contact order on McCrady's fundamental right to parent, and whether the conditions are necessary to prevent the child or future children from harm.

VI

We remand for resentencing for the court to consider McCrady's fundamental parental rights in relation to his community custody conditions. Otherwise, we affirm.

_Birk, J._

WE CONCUR:

_____, ACJ _____

22