**FILE**

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
DECEMBER 19, 2024

_González, C.J._
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
DECEMBER 19, 2024

SARAH R. PENDLETON
ACTING SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 102002-3 |
| Respondent, | ) | (consolidated w/102003-1) |
| v. | ) | |
| | ) | En Banc |
| TIMOTHY MICHAEL KELLY, | ) | |
| Petitioner. | ) | Filed: December 19, 2024 |

MADSEN, J.—Timothy Kelly is one of many incarcerated individuals affected by this court's decision in *State v. Blake*, 197 Wn.2d 170, 195, 481 P.3d 521 (2021) (overturning Washington's former drug possession statute, RCW 69.50.4013(1)). In May 2006, Kelly was convicted of unlawful possession of a controlled substance, among other things. The conviction affected Kelly's offender scores for the May 2006 offenses and subsequent offenses committed in November 2006.

In 2021, after *Blake* was decided, Kelly sought resentencing for the 2006 convictions. The trial court granted resentencing only for the November convictions and

reduced Kelly's sentence by running two firearm enhancements concurrently. None of the November convictions were for drug possession.

Primarily at issue is the Court of Appeals' holding that Kelly is not entitled to a new resentencing hearing for convictions unrelated to the now vacated drug possession convictions since his request for relief is time barred. RCW 10.73.090(1). Also at issue is the Court of Appeals' holding that the trial court lacked the authority to run Kelly's two firearm enhancements concurrently. RCW 9.94A.533(3)(e); *State v. Brown*, 139 Wn.2d 20, 29, 983 P.2d 608 (1999), *overruled in part on other grounds by State v. Houston-Sconiers*, 188 Wn.2d 1, 391 P.3d 409 (2017). We affirm the Court of Appeals on both issues, applying RCW 10.73.090 and .100.

BACKGROUND

In May 2006, Kelly was convicted of unlawful possession of a controlled substance along with other burglary-related offenses. Kelly's offender scores for the various offenses ranged between a low of 11 and high of 14 points. Kelly was sentenced to 116 months for first degree burglary and lesser amounts for his remaining convictions. The convictions were to run concurrently. Kelly received a total of 116 months of confinement and up to 36 months of community custody.

Later, in November 2006, Kelly was convicted of two counts of first degree burglary, along with multiple counts of first degree theft, first degree unlawful possession of a firearm, and theft of a firearm. Each burglary count carried a 60-month firearm enhancement. Kelly's offender scores ranged between a low of 21.5 and high of 26.5

points.  The trial court found substantial and compelling reasons to justify imposing an exceptional sentence outside the standard range and sentenced Kelly to 338 months of total confinement.

Kelly appealed his judgment and sentence.  The Court of Appeals affirmed the convictions but remanded for resentencing under the proper version of the Sentencing Reform Act of 1981 (SRA), ch. 9.94A RCW.[1]  On remand, the sentencing court imposed an exceptional sentence below the standard range of 387 months of total confinement, which was longer than the original 338 months imposed in 2006.  Both firearm enhancements were to run consecutive to each other and to Kelly's other sentences.

In sum, Kelly's May and November 2006 sentences were ordered to run consecutively.

### Post-Blake Proceedings

In 2021, Kelly sought relief pursuant to *Blake*, which nullified his drug possession conviction.  At the resentencing hearing, the court vacated Kelly's unlawful possession conviction in the May 2006 judgment and sentence, reducing his offender scores for the May and November 2006 convictions.  The court denied resentencing on Kelly's remaining May 2006 convictions since he already served his sentence and his standard sentencing ranges did not change.  While Kelly lost three convictions post-*Blake*, his offender scores actually increased due to subsequent convictions.  Kelly appealed.

---

[1] The State conceded that the sentencing court erroneously imposed an exceptional sentence using an incorrect version of the SRA, and Kelly was resentenced in September 2009 for his November 2006 convictions.

As to Kelly's November 2006 convictions, the trial court granted resentencing. The court corrected the judgment and sentence by removing 2 points from Kelly's offender scores due to his previous unlawful possession convictions. The new offender scores ranged from a low of 19 to a high of 23 points, meaning the standard sentencing ranges remained the same.

Kelly requested the low end of the standard sentencing ranges and for the firearm enhancements to run consecutively for the November 2006 convictions. The State requested that Kelly's sentence remain unchanged due to his high offender scores, but did not object to resentencing. The court stated that it would "take advantage of the exceptional sentence" that the previous sentencing judge imposed and ordered that the two firearm enhancements run concurrently. Verbatim Rep. of Proc. (Nov. 4, 2021) (56461-1-II) (VRP) at 25. The court further stated,

> [G]iven the magnitude of the offender score, given the nature of the offenses, given the firearms that were present, it's difficult for me to do anything more than that, given that the trial judge who heard all of the evidence and already declared an exceptional sentence and would have been in the best position to mete out leniency . . . opted not to.

*Id*. at 27. Therefore, Kelly's sentence for the multiple convictions remained the same as imposed in 2009.

The State appealed the trial court's order running the firearm enhancements concurrently. Kelly cross appealed, arguing the May and November 2006 sentences should run concurrently because the resentencing hearings were scheduled for the same day.

The Court of Appeals held that the trial court correctly denied Kelly's request for resentencing for the May 2006 non-drug-related convictions since Kelly's request would be time barred under RCW 10.73.090(1) and .100. *State v. Kelly*, No. 56475-1-II, slip op. at 2-3 (Wash. Mar. 28, 2023) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2%2056475-1-II%20Unpublished%20Opinion.pdf.

In the consolidated case involving Kelly's resentencing for his November 2006 convictions, none of which were *Blake* drug possession convictions, the Court of Appeals held that Kelly was not entitled to a new resentencing due to the time bar. *State v. Kelly*, 25 Wn. App. 2d 879, 890-91, 526 P.3d 39 (2023). Thus, the court reversed the sentence and remanded to the trial court to correct the September 2009 judgment and sentence by removing 2 points from Kelly's offender score but leaving unchanged Kelly's sentence. *Id*. at 892. The court declined to address Kelly's cross appeal. *Id*. at 891-92.

Kelly petitioned for review here, which we granted.[2] We received amici curiae briefing from the Redemption Project of Washington (Redemption Project) and the Freedom Project, Civil Survival, Fred T. Korematsu Center for Law and Equality, King County Department of Public Defense, and Washington Association of Criminal Defense Lawyers (Freedom Project). The State seeks to strike portions of the Redemption Project's and Freedom Project's briefs. We discuss the motions below.

---

[2] We granted review and consolidated Kelly's appeals. Ord. Granting & Consolid. Rev., No. 102002-3 (Wash. Oct. 3, 2023).

ANALYSIS

As noted, the primary issue before us is Kelly's postconviction resentencing request.[3] A collateral attack is any form of postconviction relief other than direct appeal. RCW 10.73.090(2). A collateral attack on a judgment and sentence may not be filed more than one year after the judgment and sentence becomes final unless certain exceptions apply. RCW 10.73.090(1), .100. Kelly contends the State forfeited reliance on the time bar argument when it did not raise the issue in the trial court.[4] At oral argument, Kelly's counsel further argued that facial invalidity, like a statute of limitations in civil cases, must be raised or it is waived. Wash. Sup. Ct. Oral Arg., *State v. Kelly*, No. 102002-3 (Feb. 15, 2024) at 8 min., 16 sec., *audio recording by TVW*, Washington State's Public Affairs Network, http://www.tvw.org.

RCW 10.73.090's time bar is not an affirmative defense that may be waived; it is a procedural pathway for obtaining postconviction review.[5] RCW 10.73.090 plainly states,

---

[3] Kelly filed a motion to estop the State from arguing noncompliance with CrR 7.8 as a basis for denying relief. The State claims it has not argued that Kelly's noncompliance with CrR 7.8's procedural requirements should be a basis for affirming the Court of Appeals. Moreover, to the extent Kelly raises new arguments in his reply to the State, we decline to consider them. *See* RAP 13.7(b). Therefore, we deny Kelly's estoppel motion.

[4] During Kelly's *Blake* hearing, the Court of Appeals held that the one-year time bar on collateral review did not apply to a facially invalid judgment and sentence due to a miscalculated offender score and standard range even though an exceptional sentence was imposed. *State v. Fletcher*, 19 Wn. App. 2d 566, 572-73, 497 P.3d 886 (2021). The State was unaware this court would accept review of *Fletcher*; thus, it was proper to raise the time bar argument in the Court of Appeals after review was granted.

[5] According to the dissent, *In re Pers. Restraint of Benn*, 134 Wn.2d 868, 939, 952 P.2d 116 (1998), *In re Pers. Restraint of Fowler*, 197 Wn.2d 46, 53, 479 P.3d 1164 (2021), and *State v. Loos*, 14 Wn. App. 2d 748, 756-57, 473 P.3d 1229 (2020), support its argument that the State waived the time bar. Dissent at 1, 9-10. We disagree. In *Benn*, this court denied a personal restraint petition and held that additional issues raised in a supplemental brief were time

"No petition or motion for collateral attack on a judgment and sentence in a criminal case may be filed more than one year after the judgment becomes final if the judgment and sentence is valid on its face and was rendered by a court of competent jurisdiction." The only exceptions to this prohibition are those explicitly listed in RCW 10.73.100. *See In re Pers. Restraint of Coats*, 173 Wn.2d 123, 131, 135, 267 P.3d 324 (2011) (stating that a conviction may be collaterally challenged on any grounds for a year after it is final, but after a year, a petitioner must show that one of the six exceptions under RCW 10.73.100 applies if the judgment and sentence is facially valid); *In re Pers. Restraint of Adams*, 178 Wn.2d 417, 424, 309 P.3d 451 (2013) (RCW 10.73.090's one-year time bar for collateral attacks is a general rule, and RCW 10.73.100 provides limited and narrow exceptions); *In re Pers. Restraint of Runyan*, 121 Wn.2d 432, 451, 853 P.2d 424 (1993) (holding that the petitioner's collateral challenge was barred since RCW 10.73.090(1)'s one-year time bar had passed unless the petitioner qualifies for an exception listed under RCW 10.73.100). The legislature placed the burden on petitioners to show that they fall under an exception to the one-year time bar.[6]

---

barred. 134 Wn.2d at 940. *Fowler* concerned equitable tolling of the time bar in RCW 10.73.090(1)—an issue that is not before us—and *Loos* did not deal with collateral attacks. Further, it is unclear why the dissent discusses *State v. Vasquez*, No. 102045-7 (Wash. Dec. 19, 2024). The distinct procedural posture in that case dictated a different outcome. *See id.*, slip op. concurrence at 2-4 (Madsen, J.).

[6] RAP 2.5(a) provides that "[t]he appellate court may refuse to review any claim of error which was not raised in the trial court." However, the appeals court below reached the issue, and Kelly has asked this court to determine whether exceptions to the time bar apply. Review of the time bar argument is warranted.

A judgment becomes final on the date it is filed with the trial court clerk or "[t]he date that an appellate court issues its mandate disposing of a timely direct appeal from the conviction." RCW 10.73.090(3)(a)-(b). However, the time bar in RCW 10.73.090(1) does not apply to a judgment and sentence that is facially invalid or when there has been a significant change in the law, whether substantive or procedural, that is material to the conviction or sentence. RCW 10.73.100(7).

Here, we are asked to determine whether there has been a significant change in the law or facial invalidity of the judgment and sentence, permitting resentencing in cases where the criminal history has changed due to a later voided conviction being used in the previous sentencing. RCW 10.73.100(7), .090(1).

1. Significant Change in the Law

RCW 10.73.100(7) provides an exception to the one-year time bar when "[t]here has been a significant change in the law, whether substantive or procedural, which is material to the conviction[ or] sentence." A significant change in the law must also have retroactive effect. *Id*.

Kelly argues that *Blake* is a significant change in the law that is retroactive and material to his sentences. Kelly contends that those sentences were based in part on prior or current convictions for drug possession and that a court needs an accurate understanding of a person's criminal history when sentencing a defendant. Additionally, Kelly argues that the elimination of the unconstitutional convictions resulted in the resentencing court justifying a five-year reduction in his September 2009 sentence, which

illustrates how *Blake* is material to his sentences. He claims that although his offender scores remained above 9 points, the judge sentenced him to an exceptional downward sentence. As a result, Kelly asserts that the fact that the standard sentencing range did not change is irrelevant. We disagree.

There is no dispute that *Blake* is a significant and retroactive change in the law as applied to convictions for unlawful possession of a controlled substance. Accordingly, *Blake* requires removal of drug possession convictions from judgment and sentences. The question here is whether Kelly is entitled to resentencing for his *non-drug*-related convictions.

For further relief, Kelly must demonstrate that the decision in *Blake* was material to his sentences on the remaining nonpossession convictions. We hold that it is not.

Whether a change in the law is material to a sentence "'depends upon the facts and circumstances of each case.'" *In re Pers. Restraint of Zamora*, 14 Wn. App. 2d 858, 863, 474 P.3d 1072 (2020) (quoting *In re Pers. Restraint of Hartzell*, 108 Wn. App. 934, 940, 33 P.3d 1096 (2001)). Kelly contends that *Blake* is material to his sentences because it altered his offender scores. However, our case law has held a significant change in the law to have been material to a petitioner's sentence when it would have resulted in a different outcome or process at sentencing. *See In re Pers. Restraint of Domingo-Cornelio*, 196 Wn.2d 255, 263-64, 474 P.3d 524 (2020) (holding *State v. Houston-Sconiers*, 188 Wn.2d 1, 391 P.3d 409 (2017), was material to the petitioner's sentence since the trial court was *required* to consider youth when imposing a standard adult range

sentence for crimes committed as a child); *In re Pers Restraint of Kennedy*, 200 Wn.2d 1, 24, 513 P.3d 769 (2022) (holding *In re Pers. Restraint of Monschke*, 197 Wn.2d 305, 482 P.3d 276 (2021), was not material to defendant's sentence because the defendant was not convicted of aggravated murder). In other words, a petitioner must show that the change in the law had a practical effect in their case.

As to Kelly's May 2006 convictions, the trial court corrected the judgment and sentence to remove the *Blake* conviction but declined to resentence Kelly because he had already served his sentence.[7] Beyond the correction of his judgment and sentence, Kelly cannot show he is entitled to relief. *See* RAP 16.4. His standard ranges remained the same, and his offender scores would have actually increased due to his subsequent convictions in November 2006.

Kelly's November 2006 convictions did not include any drug possession convictions. *Blake* required only that his offender scores be corrected. Kelly's offender scores remained above 9 points even after the correction and his September 2009 sentence (for his November 2006 convictions) was already an exceptional sentence downward. Assuming the actions of the resentencing court are relevant to materiality, there is no indication the resentencing court would reach a different decision today.[8] Aside from running the firearm enhancements concurrently, the resentencing judge for

---

[7] Kelly remains incarcerated for the November 2006 convictions and has not yet begun the community custody portion; thus, Kelly's sentence has not yet been completed.
[8] Kelly urges that we look to the actions of the resentencing court to determine whether *Blake* is material to his sentence. We disagree. In determining materiality of the change in the law, we consider the impact on the original sentence.

Kelly's November 2006 convictions refused to alter Kelly's base sentence. The judge

noted the "magnitude of the offender score," the nature of the offense, and the presence

of firearms made it "difficult for [the judge] to do anything more than that, given that the

trial judge who heard all of the evidence and already declared an exceptional sentence

and would have been in the best position to mete out leniency. . . opted not to." VRP at

27. Kelly fails to show how *Blake* is material to his sentences, especially where the

correction of his offender scores had no practical effect on his standard ranges.

Furthermore, the practical effect of Kelly's argument would mean that any person

seeking relief under *Blake* could avoid the one-year time bar and seek resentencing on *all*

convictions—even when none of those convictions were for drug possession—because

they *may* have affected a defendant's sentence, even when an offender score was well

over 9 points.[9]

We hold that the significant change in the law exception under RCW 10.73.100(7)

applies for purposes of vacating Kelly's unconstitutional convictions and correcting his

offender scores, but does not entitle Kelly to resentencing for his remaining convictions.

2. Facial Invalidity

Relatedly, Kelly argues that a judgment and sentence based on an unconstitutional

conviction is facially invalid. RCW 10.73.090(1). The unconstitutional convictions

---

[9] The SRA grid shows standard sentencing ranges factored by a defendant's "offender score." RCW 9.94A.510. There are 0 to 9+ points on the horizontal axis of the grid that indicate a defendant's offender score. Points are added according to RCW 9.94A.525. The offender score determines the standard sentencing range, and once a defendant's offender score reaches 9 points and above, their standard range sentence remains the same.

11

resulted in Kelly's offender scores being greater than they should have been at the time of his May and November 2006 sentencings. Our case law demonstrates that even when an offender score is miscalculated, if it did not alter the proper standard sentencing range, and the trial court imposed a sentence within its statutory authority, then the judgment and sentence is not facially invalid.

For purposes of the one-year time bar, this court has held invalid judgment and sentences when a court has *exceeded its statutory authority* in entering the judgment or sentence. *See Coats*, 173 Wn.2d at 135. Not all errors in a judgment or sentence render it invalid. *See In re Pers. Restraint of McKiearnan*, 165 Wn.2d 777, 782, 203 P.3d 375 (2009) (a mistaken statement regarding the maximum sentence on the judgment and sentence did not render the judgment and sentence facially invalid). Instances where this court has held a judgment and sentence to be invalid include when a court imposed an unlawful sentence based on a washed out prior offense and when a sentence exceeded the statutory maximum. *Coats*, 173 Wn.2d at 136; *In re Pers. Restraint of Tobin*, 165 Wn.2d 172, 176, 196 P.3d 670 (2008) (holding the petitioner's sentence to be facially invalid where the sentencing court imposed a sentence beyond what was statutorily authorized).

In *Coats*, the petitioner was convicted of conspiracy to commit robbery and petitioner's judgment and sentence reflected the maximum sentence as life, when the maximum sentence for that crime was actually 10 years. 173 Wn.2d at 143. Although the judgment and sentence misstated the maximum possible sentence, the petitioner was sentenced within the standard sentencing range for the offense. As a result, this court

determined the petitioner's judgment and sentence was not facially invalid since the sentencing court did not exceed its authority when it sentenced the petitioner within the statutorily authorized range. *Id*.

In *In re Personal Restraint of Toledo-Sotelo*, this court also held that the facial invalidity exception did not apply where the petitioner's offender score and seriousness level had been miscalculated by the sentencing court. 176 Wn.2d 759, 768, 297 P.3d 51 (2013). We noted that facial invalidity requires "more than an error that 'invite[s] the court to exceed its authority'; the sentencing court must actually pass down a sentence not authorized under the SRA." *Id*. at 767 (alteration in original) (quoting *Coats*, 173 Wn.2d at 136).

The role of the offender score is to determine the correct sentencing range, and *Toledo-Sotelo* clarified that "for purposes of facial invalidity, we are interested in whether the sentencing range is accurately calculated." *Id*. at 768. The court reasoned that allowing "an erroneous offender score to poison an otherwise accurate and statutorily authorized sentencing range" would not further the policy purposes articulated in the SRA. *Id*. The petitioner's offender score was miscalculated downward, but the sentencing court reached the correct sentencing range regardless. *Id*. This court also noted that there was nothing to suggest the trial court would have sentenced the petitioner

differently even if it had the correct offender score and seriousness level at sentencing. *Id*. at 768-69.[10]

In *In re Personal Restraint of Richardson*, our most recent case on this issue, the petitioner failed to show an actual effect on his standard range. 200 Wn.2d 845, 847, 525 P.3d 939 (2022) (Ord.). There, the petitioner was convicted of first degree murder, among other things. *Id*. at 846. Similar to Kelly, the petitioner's offender score in *Richardson* erroneously included a prior conviction for attempted possession of a controlled substance, which is now void under *Blake*. *Id*. at 847. That resulted in a reduction of the petitioner's offender score from a 10 to 9 points, but the standard sentencing range remained the same even with the reduced offender score. *Id*. The sentence imposed fell within the statutory range authorized. *Id*. Thus, this court determined that the petitioner's judgment and sentence was not facially invalid. *Id*.

As in *Coats*, *Toledo-Sotelo*, and *Richardson*, the sentencing court in this case did not exceed its authority because it was working with the correct standard range when it sentenced Kelly to an exceptional sentence downward. Kelly's offender scores, even after the *Blake*-related convictions were removed, is well above 9 points. His new offender scores range from a low of 19 to a high of 23 points for his November 2006 convictions. Therefore, his standard sentencing ranges, even after the reduction via

---

[10] To the extent the court in *Toledo-Sotelo* considered whether the trial court would have sentenced the defendant differently if the court had the proper offender score and seriousness level at sentencing, it is dicta since the court did not exceed its authority as demonstrated in *Coats*, and, thus, there was no facial invalidity.

*Blake*, remained the same.  As our case law has established, a judgment and sentence has been rendered facially invalid when a sentencing court exceeds its authority.  The sentencing court here did not exceed its authority when it sentenced Kelly.  As *Toledo-Sotelo* highlighted, allowing an incorrect offender score to poison an otherwise statutorily authorized sentencing range does not serve the policy purposes of the SRA.  176 Wn.2d at 768.  Rather, doing so would undermine our interest in the finality of judgments. *Shumway v. Payne*, 136 Wn.2d 383, 399, 964 P.2d 349 (1998).

Kelly contends, though, that *Richardson* either is distinguishable or that it should be overruled.[11]

First, Kelly contends that *Richardson* is distinguishable because the trial court in that case did not impose an exceptional sentence downward.  He also states that

_____

[11] The Court of Appeals has cited to this court's holding in *Richardson* in various unpublished opinions to decline resentencing individuals affected by *Blake* if their offender scores remained higher than 9 points even after their *Blake* convictions were vacated.  *See State v. Lance*, No. 84527-6-I, slip. op. at 6 (Wash. Ct. App. Oct. 09, 2023) (unpublished), https://www.courts.wa.gov/opinons/pdf/845276.pdf; *State v. Morris*, No. 57401-2-II, slip op. at 4-5 (Wash. Ct. App. Dec. 26, 2023) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2%2057401-2-II%20Unpublished%20Opinion.pdf; *State v. Ross*, No. 84121-1-I, slip. op. (Wash. Ct. App. Jun. 20, 2023) (unpublished), https://www.courts.wa.gov/opinions/pdf/841211.pdf; *In re Pers. Restraint of Kier*, No. 84073-8-I, slip. op. at 3-4 (Wash. Ct. App. Jan. 23, 2023) (unpublished), https://www.courts.wa.gov/opinions/pdf/840738.pdf; *In re Pers. Restraint of Brennan*, No. 84286-2-I, slip. op. at 2 (Wash. Ct. App. Jan. 23, 2023) (unpublished), https://www.courts.wa.gov/opinions/pdf/842862.pdf; *In re Pers. Restraint of Smith*, No. 56449-1-II, slip. op. at 2-3 (Wash. Ct. App. Feb. 07, 2023) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2%2056449-1-II%20Unpublished%20Opinion.pdf; *In re Pers. Restraint of Priebe*, No. 84280-3-I, slip. op. at 4-5 (Wash. Ct. App. Jan. 23, 2023) (unpublished), https://www.courts.wa.gov/opinions/pdf/842803.pdf; *In re Pers. Restraint of Jensen*, No. 84201-3-I, slip. op. at 2 (Wash. Ct. App. Dec. 12, 2022) (unpublished), https://www.courts.wa.gov/opinions/pdf/842013.pdf.

*Richardson* involved a prior drug possession conviction while Kelly's May 2006

conviction included an unconstitutional current drug possession conviction.[12]

Kelly fails to demonstrate why these differences are relevant.  He cites to *State v.*

*Parker*, 132 Wn.2d 182, 189, 937 P.2d 575 (1997), to say that before imposing an

exceptional sentence, a court must have an accurate understanding of the offender score

and prior offenses.  In *Parker*, the sentencing court had incorrectly calculated the

standard range and this court held that a sentencing court must first correctly determine

the standard sentencing range before it can depart from it.  *Id*.  *Parker*, however, was a

direct appeal and there was no question of facial invalidity.  Moreover, here, Kelly's

standard sentencing range remained unchanged and even at the resentencing hearing, the

judge declined to alter Kelly's sentence aside from running the firearm enhancements

concurrently.  Furthermore, Kelly's May 2006 sentence was not solely for his *Blake*-

related convictions, and Kelly does not meaningfully argue why his judgment and

sentence is facially invalid as to his convictions that are unrelated to *Blake*.

Alternatively, Kelly urges us to overrule *Richardson*.  "[T]his court will reject its

prior holdings only upon 'a clear showing that an established rule is incorrect and

harmful.'"  *State v. Otton*, 185 Wn.2d 673, 678, 374 P.3d 1108 (2016) (quoting *In re*

---

[12] Kelly also states that the holding in *Richardson* is undermined because it was decided by five justices through an order without a merit briefing, oral argument, or conferencing between the nine justices.  However, he cites to no authority other than to say "[i]ts status as precedent is doubtful and should not be followed."  Suppl. Br. of Pet'r at 23.  We do not consider issues lacking meaningful argument or citation to authority.  RAP 10.3(a)(6); *Am. Legion Post No. 32 v. City of Walla Walla*, 116 Wn.2d 1, 7, 802 P.2d 784 (1991).

*Rights to Waters of Stranger Creek*, 77 Wn.2d 649, 653, 466 P.2d 508 (1970)).  Another

basis to overrule prior precedent is when the legal underpinnings for the decision has

eroded.  *W.G. Clark Constr. Co. v. Pac. Nw. Reg'l Council of Carpenters*, 180 Wn.2d 54,

66, 322 P.3d 1207 (2014); *State v. Ortiz Martinez*, 196 Wn.2d 605, 612, 476 P.3d 189

(2020).  Rejecting a prior decision of this court is not an invitation that is taken lightly.

*Otton*, 185 Wn.2d at 678.  "The question is not whether we would make the same

decision if the issue presented were a matter of first impression.  Instead, the question is

whether the prior decision is so problematic that it *must* be rejected, despite the many

benefits of adhering to precedent."  *Id*.

Kelly contends that *Richardson* is incorrect because it relied on *Coats* and *Toledo-*

*Sotelo.*  He argues that those cases involved mere statutory errors and "technical

misstatements" in the judgment and sentences that had no practical effect, meanwhile his

sentence concerns an unconstitutional conviction.  Suppl. Br. of Pet'r at 23-24.  Kelly

cites *State v. Ammons*, 105 Wn.2d 175, 188, 713 P.2d 719 (1986), as requiring

resentencing "without the unconstitutional conviction being considered" whenever a prior

conviction is found to be unconstitutional.  But, *Ammons* does not stand for that

proposition.  *Ammons* simply stated that a defendant who has successfully challenged the

constitutionality of a conviction through an established avenue for postconviction relief

"*can* be resentenced without the unconstitutional conviction being considered."  *Id*.

(emphasis added).  The case does not require resentencing.  Nor is one necessary,

especially here, where the error in the offender scores had no practical effect on the

standard sentencing range. Kelly's *Blake*-related convictions were deleted from his judgment and sentences and his offender scores were corrected. Kelly fails to show how *Richardson* was incorrect.

Kelly also fails to show how the decision is harmful—which is a separate inquiry. *See Otton*, 185 Wn.2d at 687-88. *Richardson* is limited to defendants who have erroneous offender scores due to prior convictions that are now invalid, but whose sentencing ranges did not change, and who were subsequently sentenced within the statutorily authorized range. Those defendants are unable to show facial invalidity based on the erroneous offender score when the sentencing court acted within its authority. Kelly fails to show how *Richardson* is harmful. We decline to overrule it.

Next, Kelly argues that once a conviction is vacated, the entire judgment and sentence is also vacated and necessitates resentencing. He cites as supporting authorities *In re Personal Restraint of Skylstad*, 160 Wn.2d 944, 954, 162 P.3d 413 (2007), and *State v. Waller*, 197 Wn.2d 218, 228, 481 P.3d 515 (2021), which state that a court effectively vacates the judgment when it reverses the sentence.[13]

---

[13] Kelly also relies on *Skylstad* and *Waller* to claim that the scheduling of a resentencing hearing vacates a judgment and sentence since its finality has been destroyed. He additionally cites to *State v. McWhorter*, 2 Wn.3d 324, 535 P.3d 880 (2023), which relies heavily on *Waller* in reaching its conclusion. However, in both *Waller* and *McWhorter*, the superior court had ordered a complete resentencing to consider the mitigating qualities of youth. *Id*. at 327-28. That is not the case here. Kelly's *Blake* resentencing hearing was meant to vacate the unconstitutional drug possession convictions and determine whether resentencing was required under RCW 10.73.100 or .090. Our analysis below further describes why the cases Kelly relies on are inapposite.

These cases do not support Kelly's position. The *Waller* court accepted review on the narrow issue of whether the State has a right to appeal an order granting a CrR 7.8(b) motion under RAP 2.2(b)(3). 197 Wn.2d at 224. The case did not deal with facial validity. In fact, the defendant had sought to vacate his sentence based on *State v. O'Dell*, 183 Wn.2d 680, 689, 358 P.3d 359 (2015), which would have allowed the mitigating qualities of youth to justify imposing an exceptional sentence below the standard sentencing range. *Waller*, 197 Wn.2d at 221. The defendant argued the significant change in the law exception overcame the one-year time bar. *Id.* (citing former RCW 10.73.100(6) (1989), *recodified as* RCW 10.73.100(7) (LAWS OF 2024, ch. 118, § 8). The trial court later granted the motion and vacated the sentence. *Id*. at 221-22. Based on the posture of the case, *Waller* held that the State was entitled to appeal the trial court's ruling.

*Waller* does not support Kelly's claim that vacating a *Blake* conviction results in vacating his entire judgment and sentence.

*Skylstad* is also inapposite. The question there was whether a 2005 personal restraint petition was time barred where the Court of Appeals affirmed the conviction but reversed the sentence in 2004. *Skylstad*, 160 Wn.2d at 946. The petitioner was later resentenced in 2004 and appealed again. *Id*. *Skylstad* held that the 2004 mandate issued by the Court of Appeals was not a final judgment because it did not dispose of the petitioner's second appeal. *Id*. at 955. Therefore, the petition was not untimely. *Id*.

19

Here, there is no doubt the cases were final, and the only question is whether the one-year time bar applies.

More importantly, this court has already held that the existence of a facial sentencing error does not open up the judgment and sentence for other time-barred collateral attacks. In *In re Personal Restraint of Snively*, we held that a sentencing court lacked statutory authority to impose community placement on a petitioner's indecent liberties conviction. 180 Wn.2d 28, 31, 320 P.3d 1107 (2014). Though we held the petitioner's judgment and sentence facially invalid, the invalidity related *solely* to an indecent liberties conviction. *Id*. The remedy was to correct the sentence. *Id*. As in *Snively*, the remedy in this case is correction of the error as opposed to opening up the entire judgment and sentence to attack. *See Adams*, 178 Wn.2d at 424 (reasoning that when the facial invalidity "is cured, the entry of a corrected judgment does not trigger a new one-year window for judgment provisions that were always valid on their face").

Similarly, this court decided that resentencing was not the proper remedy for a facially invalid judgment and sentence in *In re Personal Restraint of McWilliams*, 182 Wn.2d 213, 218, 340 P.3d 223 (2014). In *McWilliams*, the petitioner collaterally attacked his judgment and sentence as facially invalid because his sentence combined with his community custody exceeded the statutory maximum for his offense. *Id*. at 215-16. This court held that the appropriate remedy was a notation in the judgment and sentence explicitly stating that the combination of confinement and community custody would not exceed the statutory maximum in the case of an exceptional sentence. *Id*. at 218. It then

20

remanded the case to the trial court to amend the sentence and include the notation. *Id.*; *see In re Pers. Restraint of Brooks*, 166 Wn.2d 664, 675, 211 P.3d 1023 (2009) ("We hold that when a defendant is sentenced to a term of confinement and community custody that has the potential to exceed the statutory maximum for the crime, the appropriate remedy is to remand to the trial court to amend the sentence and explicitly state that the combination of confinement and community custody shall not exceed the statutory maximum."). As in other circumstances where an error appears in the judgment and sentence, we hold that vacating Kelly's *Blake*-related convictions was a correction to the judgment and sentence rather than a vacation of the entire judgment.[14]

   3. Imposition of Concurrent Sentences for Deadly Weapon Enhancements

We must begin with the plain language of the firearm enhancement statute. Questions of statutory construction are questions of law reviewed de novo. *State v. Evans*, 177 Wn.2d 186, 191, 298 P.3d 724 (2013). "Our fundamental objective in construing a statute is to ascertain and carry out the intent of the legislature." *Fed. Way Sch. Dist. No. 210 v. Vinson*, 172 Wn.2d 756, 765, 261 P.3d 145 (2011). When possible, we look to the plain language of a statute to construe its meaning. *Evans*, 177 Wn.2d at 192; *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 10, 43 P.3d 4 (2002). If the meaning cannot be derived from looking at the language of the statutory text then we

---

[14] Kelly argues that his May and November 2006 sentences should run concurrently. Since we determine that he is not entitled to resentencing, we do not address this argument.

look to related statutes and the overarching statutory scheme. *Campbell & Gwinn*, 146

Wn.2d at 10.

RCW 9.94A.533(3)(e)[15] states,

Notwithstanding any other provision of law, all firearm enhancements under this section are mandatory, shall be served in total confinement, and shall run consecutively to all other sentencing provisions, including other firearm or deadly weapon enhancements, for all offenses sentenced under this chapter.

In *Brown*, the court interpreted the language in the preceding statute as clearly

indicating that deadly weapon enhancements are mandatory and must be served in total

confinement. 139 Wn.2d at 28. Here, the plain language under RCW 9.94A.533(3)(e)

indicates that firearm enhancements *must* be run consecutively. This is evident

considering the statute's mandatory language: "*shall* be served in total confinement, and

*shall run consecutively* to all other sentencing provisions, *including other firearm or

deadly weapon enhancements*." RCW 9.94A.533(3)(e) (emphasis added). This language

does not imply that a sentencing court has discretion to impose an exceptional sentence

with respect to firearm enhancements.[16]

Kelly urges us to overrule *Brown*, which concluded that sentences on deadly

weapon enhancements may not be modified through an exceptional sentence. As

---

[15] Chapter 9.94A RCW has been amended several times since Kelly was originally sentenced. These amendments have not affected the relevant language and are therefore not relevant to the statutory analysis here. Therefore, we reference the current versions of the statutory sections.
[16] Kelly attempts to argue that the length of sentencing enhancements can be modified under RCW 9.94A.535(1), which has exceptional sentence provisions. However, the plain language of RCW 9.94A.533(3)(e) is clear.

explained above, stare decisis requires that we find the prior decision to be both

"'incorrect and harmful'" to overrule it. *Otton*, 185 Wn.2d at 678 (quoting *Stranger*

*Creek*, 77 Wn.2d at 649). Or we must find that the legal underpinnings of a decision

have been eroded and require reversal. *Quinn v. Dep't of Revenue*, 1 Wn.3d 453, 470

n.8, 526 P.3d 1 (2023), *cert. denied*, 144 S. Ct. 680 (2024). Stare decisis is meant to

establish the requisite element of stability in court-made law. *Stranger Creek*, 77 Wn.2d

at 653. We hold that Kelly fails to establish that this court's interpretation of the deadly

weapon enhancement statute in *Brown* is incorrect, particularly where the legislature has

not amended the statute post-*Brown*.

In *In re Matter of Post Sentencing Review of Charles*, we interpreted the precursor

to the current firearm enhancement provision, former RCW 9.94A.310(3)(e) (1997),[17] to

mean that multiple sentence enhancements must run consecutive to base sentences but

could be run concurrently to each other. 135 Wn.2d 239, 254, 955 P.2d 798 (1998). The

legislature disagreed, promptly amending the statute to correct this holding. Lawmakers

clarified that "all firearm enhancements under this section are mandatory, shall be served

in total confinement, and shall . . . run . . . *consecutively to all* other sentencing

provisions, *including other firearm or deadly weapon enhancements*, *for all offenses*

---

[17] The Hard Time for Armed Crime Act increased penalties for carrying and using firearms and deadly weapons during the commission of most felonies by adopting mandatory enhancements that must "not run concurrently with any other sentencing provisions." LAWS OF 1995, ch. 129, § 2(3)(e) and 4(e) (initially codified as RCW 9.94A.310(3)(e) and (4)(e)). Soon after, this court interpreted the phrase "other sentencing provisions" to not include enhancements. *See Post Sent'g Rev. of Charles*, 135 Wn.2d at 248-54.

*sentenced under this chapter*." LAWS OF 1998, ch. 235, § 1(3)(e) (amending former RCW 9.94A.310(3)(e), (4)(e) (1996)) (emphasis added) (underlining omitted).

Meanwhile, after *Brown*, the legislature has considered on multiple occasions whether to allow sentencing courts the ability to impose an exceptional sentence with respect to weapons enhancements or whether to make them discretionary. *See* H.B. 1862, 63d Leg., Reg. Sess. (Wash. 2013); H.B. 1148, 64th Leg., Reg. Sess. (Wash. 2015); H.B. 1169, 67th Leg., Reg. Sess. (Wash. 2021); H.B. 1268, 68th Leg., Reg. Sess. (Wash. 2023). The legislature has not passed any law abrogating *Brown*. This indicates legislative acquiescence to *Brown*'s interpretation and courts have relied on it for over 20 years. While evidence of legislative acquiescence is not conclusive, it is a consideration. *See Fast v. Kennewick Pub. Hosp. Dist.*, 187 Wn.2d 27, 39, 384 P.3d 232 (2016). The legislature's failure to take prompt action to correct this court's interpretation of the statute in *Brown* implies its acceptance of the holding.

Kelly also cites *State v. Conover* for support, which held that the bus stop enhancement statute required enhancements to run consecutively to the base sentence but not consecutively to each other. 183 Wn.2d 706, 714-15, 355 P.3d 1093 (2015). In reaching that conclusion, this court compared RCW 9.94A.533(6) with subsection (3)(e), which does explicitly state that all firearm and deadly weapon enhancements are to run consecutively to base sentences and other enhancements. RCW 9.94A.533(6) did not make that same explicit statement that enhancements must run consecutively to each other like subsection 3(e) does. Thus, the court concluded that the bus stop

enhancements could run concurrently. *Conover*, 183 Wn.2d at 714-15. The case does not support Kelly's argument. Because Kelly cannot demonstrate that the statutory interpretation in *Brown* was incorrect, we do not further analyze whether it is harmful. We decline to overrule *Brown* where the legislature has acquiesced in this court's decision, and we respect stare decisis principles.[18]

Finally, Kelly argues that the invited error doctrine bars the State's argument regarding a sentencing error when the State contributed and assented to the error by preparing the written order that created the error. Specifically, Kelly contends that the State cannot appeal when it prepared the order that stated his firearm enhancements would run concurrently.

The invited error doctrine is meant to prohibit a party from "'setting up an error at trial and then complaining of it on appeal.'" *In re Pers. Restraint of Breedlove*, 138 Wn.2d 298, 312, 979 P.2d 417 (1999) (internal quotation marks omitted) (quoting *State v. Wakefield*, 130 Wn.2d 464, 475, 925 P.2d 183 (1996)). The doctrine requires affirmative actions to be taken to contribute to the error. *In re Pers. Restraint of Thompson*, 141 Wn.2d 712, 724, 10 P.3d 380 (2000); *see State v. Boyer*, 91 Wn.2d 342, 345, 588 P.2d 1151 (1979) ("A party may not request an instruction and later complain on appeal that the requested instruction was given."). We consider whether a party "affirmatively

---

[18] Kelly also argues that *Brown* should have been interpreted in a manner as to avoid constitutional doubt and that unless the firearm enhancement provisions are subject to modification through an exceptional sentence, unconstitutional and cruel punishment will result. However, he fails to meaningfully argue this point.

assented to the error, materially contributed to it, or benefited from it." *State v. Momah*, 167 Wn.2d 140, 154, 217 P.3d 321 (2009).

As the Court of Appeals correctly reasoned, the State did not invite any error here when it prepared an order that was consistent with the judge's ruling. Although the State did not object at the time the court made its ruling, it did not request for the firearm enhancements to run concurrently. Rather, it requested that Kelly's sentence remain the same, which meant that it desired the firearm enhancements to run consecutively. This is not akin to taking actions to affirmatively set up an error. Furthermore, when a sentencing court exceeds its authority, as it did so here when it ordered Kelly's firearm enhancements to run concurrently, the invited error doctrine will not preclude review. *State v. Mercado*, 181 Wn. App. 624, 631, 326 P.3d 154 (2014).

We hold that the invited error doctrine did not preclude the State from obtaining relief on appeal.[19]

---

[19] The State seeks to strike portions of the Redemption Project's amicus brief, which it claims contains new arguments. We do not consider arguments raised solely by an amicus. *State v. Clarke*, 156 Wn.2d 880, 894, 134 P.3d 188 (2006). Therefore, we strike two sections of the brief: (1) on page 1, beginning, "The focus of this brief . . . ." through the end of the first full paragraph on page 2 that ends with the phrase "materiality in other contexts." Br. of Amicus Redemption Project of Wash. at 1-2, and (2) the paragraph beginning "This Court should . . ." through the second paragraph on page 9, ending with the phrase "due to the use of that conviction." *Id.* at 3-9. The State further requests we strike other sections of the Redemption Project's amicus brief that it claims refers to matters outside the record. In a separate motion, the State similarly seeks to strike sections of the Freedom Project's amicus brief that it claims include matters outside the record, studies that lack scientific rigor, and sections that are irrelevant to reaching the merits. However, this court may take notice of "scholarly words, scientific studies, and social facts." *See Wolf v. State*, 2 Wn.3d 93, 110, 534 P.3d 822 (2023) (denying to strike a reference to a study by the Department of Enterprise Services that was not presented to the trial court). The sections the State seeks to strike all fall under one of the three

CONCLUSION

Our case law has established that errors on the face of a judgment and sentence render it facially invalid when a sentencing court exceeds their authority in imposing a sentence. Here, Kelly's incorrect offender scores did not alter the standard sentencing ranges and the sentencing courts did not exceed their authority in imposing Kelly's sentences. *Richardson* is consistent with existing precedent and we decline to overrule it.

We hold that Kelly's May and November 2006 judgment and sentences are facially valid under RCW 10.73.090 and do not fall under the significant change in the law exception under RCW 10.73.100(6). Additionally, we hold that vacating Kelly's drug possession convictions after *Blake* did not vacate his entire judgment and sentences.

Further, we decline to overrule *Brown* since the decision tracks the language of RCW 9.94A.533(3)(e) and the legislature has acquiesced in this court's holding despite multiple invitations to amend the statute.

Finally, we conclude that the invited error doctrine does not preclude the State from challenging the judgment and sentence.

Accordingly, we affirm the Court of Appeals.

---

categories described above. Accordingly, we grant the State's motion to strike portions of the Redemption Project's brief in part, and deny the State's motion to strike portions of the Freedom Project's brief.

_____
Madsen, J.

WE CONCUR:

_____
Johnson, J.

_____
Owens, J.

_____
Stephens, J.

_____
Yu, J.

_____
Whitener, J.

No. 102002-3 (consol. w/102003-1)

GORDON McCLOUD, J. (dissenting)—The collateral attack time bar at

RCW 10.73.090 is waived unless timely raised. *In re Pers. Restraint of Benn*, 134

Wn.2d 868, 939, 952 P.2d 116 (1998); *State v. Loos*, 14 Wn. App. 2d 748, 756-57,

473 P.3d 1229 (2020). At the hearing in the trial court on Timothy Kelly's post-

*Blake*[1] motion for a resentencing hearing, the State declined to raise the time bar

issue. It did not decide to argue that Kelly's resentencing request was time barred

until the appeal.

Kelly then responded that the State's failure to raise the time bar when it

mattered most, in the trial court, amounts to waiver. The Court of Appeals ignored

Kelly's argument, accepted the State's belated assertion of untimeliness, and

denied relief on that ground.

The majority affirms. That decision conflicts with *Benn*, cited above. It

conflicts with *State v. Vasquez*, where we refused to allow the State to belatedly

argue that a motion for resentencing was untimely. *State v. Vasquez*, No. 102045-7,

---

[1] *State v. Blake*, 197 Wn.2d 170, 195, 481 P.3d 521 (2021).

at 6 n.5 (Wash. Dec. 19, 2024). It also conflicts with *State v. Waller*,[2] *State v. McWhorter*,[3] and other controlling authority holding that a trial court's decision to schedule a resentencing hearing operates to grant a CrR 7.8 motion and vacate the judgment and sentence, requiring de novo resentencing. I therefore respectfully dissent.

FACTS AND PROCEDURAL HISTORY

I.     Convictions and resentencing hearing

In May 2006, Kelly was convicted of simple drug possession, among other convictions, and that current simple drug possession conviction was of course included in his offender score.[4] In November 2006, Kelly was convicted of several additional crimes, and the court included his prior simple possession convictions in his offender score.[5]

---

[2] 197 Wn.2d 218, 481 P.3d 515 (2021).

[3] 2 Wn.3d 324, 535 P.3d 880 (2023) (per curiam).

[4] Under the same cause number, Kelly was also convicted of first degree burglary, second degree assault, first degree possession of stolen property, and attempted first degree theft. The court sentenced him to 116 months on the burglary, with sentences on the other convictions to run concurrently, and with up to 26 months of community custody. Clerk's Papers (No. 56475-1-II) at 8.

[5] In November 2006, Kelly pleaded guilty to two counts of first degree burglary each with a firearm sentencing enhancement, three counts of theft of a firearm, and two counts of unlawful possession of a firearm. *State v. Kelly*, 25 Wn. App. 2d 879, 883, 526 P.3d 39 (2023). Prior simple possession convictions, including the conviction from May

2

In 2021, this court ruled that the simple drug possession statute was unconstitutional in *Blake*. 197 Wn.2d 170. Later that year, Kelly moved for resentencing in the trial court. Verbatim Rep. of Proc. (No. 56475-1-II) (Nov. 4, 2021) (2 VRP). Although his motion is not in the record, it appears that he moved for resentencing under the authority of CrR 7.8.

The trial court then ordered a resentencing hearing at which it considered both the May and November 2006 cases. Clerk's Papers (No. 56475-1-II) (May CP) at 73; Clerk's Papers (No. 56461-1-II) (Nov. CP) at 115 (ord.). At the resentencing hearing, Kelly argued that the court should resentence him in each case to the low end of the standard range and that it should run the new sentences concurrently. Verbatim Rep. of Proc. (No. 56461-1-II) (Nov. 4, 2021) (1 VRP) at 18-19. Kelly and his mother spoke in favor of reducing Kelly's sentences in both cases. *Id.* at 21-23.

> A. Trial court's resentencing decision in November 2006 case (No. 56461-1-II)

As the majority correctly states, the court "granted resentencing" in the November 2006 case. Majority at 4; *accord Kelly*, 25 Wn. App. 2d at 884

---

2006, were included in his offender score. *Id.* Following an appeal, he was resentenced in 2009 to an exceptional mitigated sentence of 387 months. *Id.*

(referring to the "new sentence"). The court decided on an exceptional mitigated

sentence and ordered the two firearm enhancements to run concurrently with each

other. Nov. CP at 109; 1 VRP at 25-26. As the trial court acknowledged, this action

reduced Kelly's sentence by 5 years. Nov. CP at 110-11; 1 VRP at 27 (court states,

"So I'm reducing his sentence by five years today"). That certainly sounds like a

resentencing to me.

The court also ordered the judgment and sentence (J&S) to be corrected to

reflect the correct offender score after removing any *Blake*-affected convictions.

Nov. CP at 111. It otherwise reimposed the remainder of the previous sentence. *Id*.

Throughout this trial court procedure, the State "did not argue that any

request for resentencing was untimely or otherwise object to the trial court

resentencing Kelly." *Kelly*, 25 Wn. App. 2d at 884; *see also* Nov. CP at 106.

B. Trial court's resentencing decision in May 2006 case (No. 56475-
1-II)

At the same resentencing hearing, the court considered Kelly's May 2006

case. The State agreed with Kelly that the current simple possession conviction

should be vacated and hence deleted from the J&S, but it argued that the court

should otherwise "deny to hear resentencing" on the May case. 2 VRP at 8-9. The

State presented two reasons for opposing resentencing on this case. First, the State

argued that the case was moot and the court could provide Kelly no further relief

4

since Kelly had already served the confinement portion of the sentence. *Id.* at 10.

Second, the State argued that resentencing both the May and November cases on

the same day would trigger a statutory presumption that the sentences in each case

run concurrently rather than consecutively,[6] an outcome it opposed. *Id.* at 10-11.

The State did not argue that Kelly's request for resentencing was untimely, and it

did not mention the collateral attack time bar.

The court vacated the current simple possession conviction and adjusted the

offender score. May CP at 59 (ord.). Then, after considering Kelly's crimes and

circumstances—as a trial court ordinarily does when it decides on a sentence—the

court decided that "the sentence originally imposed on this defendant should be the

sentence that remains in place after removal of all *Blake*-affected convictions." *Id.*

at 63. The transcript reflects the trial court judge thoughtfully considering the

crimes of conviction and the circumstances of the defendant, along with the

defendant's arguments for a lower sentence, before making its decision about what

sentence to impose. That also sounds like a resentencing to me.

---

[6] Pursuant to RCW 9.94A.589(1)(a).

II.     Court of Appeals

   A. State's appeal and Kelly's cross appeal in November 2006 case
      (No. 56461-1-II)

The State appealed the trial court's decision to run the firearm enhancements

concurrently in the November 2006 case. Br. of Appellant (Wash. Ct. App. No.

56461-1-II (2022)). The State did not raise the RCW 10.73.090 collateral attack

time bar in its opening brief. *See id.*

Kelly cross appealed, arguing that the State had invited any error in the

resentencing and that he was entitled to the statutory presumption of concurrent

sentences since the two cases were sentenced on the same day. Br. of Resp't/Cross-

Appellant at 25 (Wash. Ct. App. No. 56461-1-II (2022)) (citing RCW

9.94A.589(1)(a)).[7]

For the first time in its reply, the State argued that Kelly's original request

for resentencing was time barred by RCW 10.73.090. Reply Br. of Appellant & Br.

of Cross-Resp't at 18 (Wash. Ct. App. No. 56461-1-II (2022)).

Kelly argued that the State had forfeited its argument that the time bar

precluded resentencing because the State had failed to raise that argument in the

---

[7] I express no opinion on the merits of Kelly's RCW 9.94A.589(1)(a) argument but note simply that the Court of Appeals did not consider it because the court ruled the original resentencing motion was time barred.

trial court. Resp't's Second Statement of Add'l Auths. at 1-3 (Wash. Ct. App. No.
56461-1-II (2022)) (citing *In re Pers. Restraint of Fowler*, 197 Wn.2d 46, 53, 479
P.3d 1164 (2021); *In re Pers. Restraint of Bonds*, 165 Wn.2d 135, 140, 196 P.3d
672 (2008) (plurality opinion); *State v. Peltier*, 181 Wn.2d 290, 296, 332 P.3d 457
(2014); *Loos*, 14 Wn. App. 2d at 756-57); *see also Bogle & Gates, PLLC v. Holly
Mountain Res.*, 108 Wn. App. 557, 562-63, 32 P.3d 1002 (2001).

The Court of Appeals acknowledged that in the trial court, the State "did not
argue that any request for resentencing was untimely or otherwise object to the trial
court resentencing Kelly" and that the State also "did not object to the new
sentence" the court imposed. *Kelly*, 25 Wn. App. 2d at 884. Yet the Court of
Appeals still considered the State's belated time bar argument, and it did not
consider any of Kelly's arguments that the State had conceded timeliness. *Id*. at
889-91. The Court agreed with the State that resentencing would be time barred on
remand. *Id.* at 890. It opined that since Kelly had not argued he met any exceptions
to the time bar (which the State had not raised) under RCW 10.73.100, his
resentencing request could be timely only if his J&S were facially invalid under
RCW 10.73.090(1). *Id*. It concluded that Kelly's J&S was not facially invalid. *Id.*
at 890-91. The Court of Appeals reversed the trial court's new sentence and
remanded to that court to remove the simple possession convictions from Kelly's
offender score, but to "leav[e] unchanged Kelly's sentence." *Id.* at 892.

B.  Kelly's appeal in May 2006 case (No. 56475-1-II)

In a separate appeal, Kelly challenged the trial court's order stating it was denying resentencing in the May 2006 case. He argued that "notwithstanding its order stating it was not resentencing Mr. Kelly, the court effectively resentenced Mr. Kelly to the same sentence in the first case" since the court had exercised discretion in choosing to keep Kelly's sentences at the high end of the range. Br. of Appellant at 15-17 (Wash. Ct. App. No. 56475-1-II (2022)). Kelly argued that because both cases were resentenced on the same day, he was entitled to the statutory presumption of concurrent sentences. *Id.* at 14 (citing RCW 9.94A.589(1)(a)).

In its answer, the State argued for the first time that Kelly's CrR 7.8 motion was time barred by RCW 10.73.090. The State had never raised the time bar in the trial court, and, as noted, the trial court hadn't discussed it, either. But the Court of Appeals agreed with the State, held that Kelly's motion was time barred, and affirmed the trial court's order without addressing the merits of Kelly's argument. *State v. Kelly*, No. 56475-1-II, at 5 (Mar. 28, 2023) (unpublished), https://www.courts.wa/gov/opinions/pdf/D2%2056475-1-II%20Unpublished%20Opinion.pdf.

Kelly moved for discretionary review in both cases. We accepted review and consolidated the cases.

ANALYSIS

I.    The State waived reliance on the collateral attack time bar by failing to raise it in the trial court

Before this court, Kelly maintains his argument that the State forfeited reliance on the collateral attack time bar by failing to raise it in the forum where it mattered most, that is, in the trial court. Suppl. Br. of Pet'r at 25 (citing RAP 2.5(a); *State v. Alton*, 89 Wn.2d 737, 739, 575 P.2d 234 (1978)).[8]

The collateral attack time bar statute, RCW 10.73.090, provides, "No petition or motion for collateral attack on a judgment and sentence in a criminal case may be filed more than one year after the judgment becomes final if the judgment and sentence is valid on its face and was rendered by a court of competent jurisdiction." RCW 10.73.100 provides seven exceptions to this rule.

But, as we have recently reaffirmed, it is "well established" that the time bar is "not jurisdictional." *Fowler*, 197 Wn.2d at 53 (citing *In re Pers. Restraint of Haghighi*, 178 Wn.2d 435, 447, 309 P.3d 459 (2013)).

---

[8] The majority asserts that "[d]uring Kelly's *Blake* hearing," the Court of Appeals decided *State v. Fletcher*, 19 Wn. App. 2d 566, 572-73, 497 P.3d 886 (2021). Majority at 6 n.4. It then asserts that because the State didn't know that this court would accept review of *Fletcher*, "it was proper to raise the time bar argument in the Court of Appeals after review was granted." *Id.* It's not clear why this court's decision to accept review in *Fletcher* has any bearing on the State's failure to raise the time bar in the trial court in this case. An argument that Kelly's resentencing request was time barred was available prior to *Fletcher*, but the State chose not to assert it.

That means that the majority's foundational assumption—that "'[t]he statutory time limit is a mandatory rule that acts as a bar to appellate court consideration of collateral attacks, unless the petitioner shows that a statutory exception applies'"—is "incorrect." *Id.* (alteration in original) (quoting *In re Pers. Restraint of Fowler*, 9 Wn. App. 2d 158, 167, 442 P.3d 647 (2019) (citing *State v. Robinson*, 104 Wn. App. 657, 662, 17 P.3d 653 (2001))). Rather, as this court has explicitly stated in another personal restraint petition case, RCW 10.73.090 is a statute of limitations. *Benn*, 134 Wn.2d at 939; *see also Bonds*, 165 Wn.2d at 140 (same); *In re Pers. Restraint of Hoisington*, 99 Wn. App. 423, 431, 993 P.2d 296 (2000) ("RCW 10.73.090 also functions as a statute of limitation and not as a jurisdictional bar."). Statute of limitations defenses are waived if not raised. *Loos*, 14 Wn. App. 2d at 756-59 (defendant waives right to raise statute of limitations on appeal by not raising it in trial court, and express waiver is not required); *King v. Snohomish County*, 146 Wn.2d 420, 424, 47 P.3d 563 (2002) (civil defendant "may waive an affirmative defense if either (1) assertion of the defense is inconsistent with defendant's prior behavior or (2) the defendant has been dilatory in asserting the defense" (citing *Lybbert v. Grant County*, 141 Wn.2d 29, 39, 1 P.3d 1124 (2000))); *Matthies v. Knodel*, 19 Wn. App. 1, 5, 573 P.2d 1332 (1977) (per curiam) ("There is a waiver of certain defenses under the civil rules if they are not affirmatively pleaded in the answer," including the defense that the statute of

limitations has expired (citing CR 8, 12(b); 3A LEWIS H. ORLAND, WASHINGTON

PRACTICE: RULES PRACTICE 34 (2d ed. 1968); 5 CHARLES A. WRIGHT & ARTHUR R.

MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 1394 (1969))).

Thus, our precedent supports Kelly's argument—whether we call it a waiver

of the statute of limitations defense, or an invited error,[9] or a forfeit error,[10] or

simply acquiescence, the State's failure to raise the time bar in the trial court

amounts to a concession that Kelly's motion for resentencing is timely. *See State v.*

*Vasquez*, No. 102045-7, slip op. concurrence at 6 (Gordon McCloud, J.).

Consistent with this precedent, the Court of Appeals in *State v. Vasquez*

declined to consider the State's belated argument, raised for the first time on

appeal, that the time bar blocked Vasquez's motion for resentencing in the trial

court. *See State v. Vasquez*, No. 38471-3 (Wash. Ct. App. May 2, 2023)

(unpublished), https://www.courts.wa.gov/opinions/pdf/384713_unp.pdf. And in

---

[9] *City of Seattle v. Patu*, 147 Wn.2d 717, 720, 58 P.3d 273 (2002) (holding that a party cannot either intentionally or accidentally set up an error and then "'complain[] of it on appeal'" (quoting *State v. Pam*, 101 Wn.2d 507, 511, 680 P.2d 762 (1984), *overruled in part on other grounds by State v. Olson*, 126 Wn.2d 315, 319, 893 P.2d 629 (1995))); *see also State v. Studd*, 137 Wn.2d 533, 547, 973 P.2d 1049 (1999).

[10] RAP 2.5(a) ("The appellate court may refuse to review any claim of error which was not raised in the trial court."); *Bengtsson v. Sunnyworld Int'l, Inc.*, 14 Wn. App. 2d 91, 110, 469 P.3d 339 (2020) (declining to consider argument on appeal not raised in trial court (citing *Modumetal, Inc. v. Xtalic Corp.*, 4 Wn. App. 2d 810, 829 n.4, 425 P.3d 871 (2018))).

this court's decision in *Vasquez*, we didn't permit the State to belatedly raise the time bar, either. No. 102045-7, slip op. at 6 n.5.[11] We squarely rejected the State's argument that the trial court and Court of Appeals were both "bound to use the collateral attack rules regarding the time bar under RCW 10.73.090," even though the State failed to raise a time bar argument in the trial court. *Id.* at 7; Pet. for Rev. at 7. Rather, we addressed the merits of the parties' sentencing arguments and held that when a court conducts a resentencing, the resentencing must be de novo. *Id.* at 14.

In other words, in both *Kelly* and *Vasquez*, the State conceded timeliness in the trial court. But where *Vasquez* accepted the State's concession of timeliness and therefore declined to reach the time bar issue, the *Kelly* majority rejects the

---

[11] Justice Madsen's concurrence in *Vasquez* attempts to harmonize the conflicting results in *Kelly* and *Vasquez* by asserting that timeliness was not an issue before this court in *Vasquez* "because the State did not object and did not raise [the timeliness] argument on appeal." No. 102045-7, slip op. concurrence at 1 n.1 (Madsen, J.). This is incorrect. In fact, the State explicitly argued that Vasquez's request for resentencing was an untimely collateral attack and made that argument the core of its appeal. *See* Br. of Resp't at 3 (Wash. Ct. App. No. 38471-3-III (2022)) ("Mr. Vazquez's request for resentencing was time barred" (boldface and italics omitted)), 12 (distinguishing *Vasquez* from a direct appeal case that "did not deal with the time bar of RCW 10.73.090"), 13 (distinguishing *Vasquez* from another case on the basis that Vasquez brought "an untimely collateral attack"). The real reason that timeliness was not an issue in *Vasquez* is because, as discussed above, the State waived the time bar argument by failing to raise it in the trial court—which is exactly what happened in Kelly's case, too. And, as stated, both the Court of Appeals and this court's lead opinion in *Vasquez* correctly declined to consider the State's belated timeliness arguments.

12

State's concession of timeliness in the trial court and addresses *only* the time bar issue. *Compare* majority at 6 n.5, *with Vasquez*, No. 102045-7, slip op. at 6 n.5. I see no principled reason for these two cases to come out so differently.[12]

Instead, I would hold that the trial court implicitly granted Kelly's CrR 7.8 motion for resentencing and vacated Kelly's judgments and sentences in both cases when it scheduled and held a resentencing hearing at which it heard both parties' resentencing recommendations and then *actually resentenced* Kelly. *Vasquez*, No. 102045-7, slip op. at 8 (trial court's action of scheduling a resentencing hearing in response to a motion for resentencing effectively grants the motion and vacates the judgment and sentence); *Waller*, 197 Wn.2d at 228 (grant of a CrR 7.8 motion "vacates the old sentence until the defendant can be resentenced"); *McWhorter*, 2

---

[12] The majority finds it "unclear" why *Vasquez* is relevant here, which illustrates its broader confusion about this case. Majority at 7 n.5. *Vasquez* and *Kelly* both concern a *Blake* resentencing conducted in the trial court where the State did not object to resentencing on time bar grounds and only belatedly argued the time bar in the appellate court. In *Vasquez*, the Court of Appeals declined to consider the State's belated time bar argument. In *Kelly*, the Court of Appeals accepted the State's belated time bar argument. The inconsistency in result between two cases with this shared procedural posture is troubling.

13

*State v. Kelly (Timothy Michael)*, No. 102002-3 (consol. w/102003-1)
(Gordon McCloud, J., dissenting)

Wn.3d 324 (same).[13, 14] The fact that the State failed to raise any argument

pertaining to the time bar in the trial court means that the State conceded

_____

[13] The *Kelly* majority directly conflicts with the *Vasquez* lead opinion by rejecting the argument that ordering a resentencing hearing vacates a judgment and sentence—a critical holding of *Vasquez*. *Compare* majority at 18 n.13, *with Vasquez*, No. 102045-7, slip op. at 8.

[14] Justice Madsen's concurrence in *Vasquez* also directly conflicts with the *Vasquez* lead opinion by asserting that "Kelly's sentence was never vacated, and although the trial court entered a scheduling order for a '*Blake* resentencing,' this did not operate to vacate his judgment and sentences." *Id.*, slip op. concurrence at 3 (Madsen, J.) (citing *State v. Kilgore*, 141 Wn. App. 817, 822, 172 P.3d 373 (2007) (plurality opinion), *aff'd*, 167 Wn.2d 28, 216 P.3d 393 (2009)). This cannot be the case. The *Vasquez* trial court never explicitly stated that it was granting the CrR 7.8 motion, and it never explicitly stated that it was vacating Vasquez's sentence. Nevertheless, the *Vasquez* lead opinion plainly held that the grant of the CrR 7.8 motion and the subsequent vacatur of the J&S were both implied in the court's action of scheduling a resentencing hearing: "ordering a resentencing hearing has the effect of vacating the original judgment and sentence." *Id.*, slip op. at 8 (emphasis added) (citing *McWhorter*, 2 Wn.3d 324). Likewise, the trial court in Kelly did not state it was granting his CrR 7.8 motion or vacating his sentences, but it scheduled and held a resentencing hearing on both the May and November cases at which it resentenced Kelly—clearly "something it could not do unless it had vacated [Kelly's] existing sentence." *Waller*, 197 Wn.2d at 229. Indeed, the *Kelly* majority itself acknowledges that the trial court proceeded with resentencing. Majority at 1 (court "granted resentencing" in the November 2006 case), 4 (describing "the resentencing hearing[]" at which the court considered both the May and November cases). If *Waller* supports the conclusion in *Vasquez* that the J&S was implicitly vacated, it equally supports the same conclusion in *Kelly*: "[A] court need not speak the magic words, 'this judgment is vacated[.]' . . . Granting a CrR 7.8 motion . . . vacates the old sentence until the defendant can be resentenced." *Waller*, 197 Wn.2d at 228.

And although Justice Madsen's concurrence attempts to cast Kelly's resentencing hearing as something other than a resentencing hearing, its citation to *Kilgore* is inapposite because in that case, the trial court actually "ruled" it was not conducting a resentencing. *Vasquez*, No. 102045-7, slip op. concurrence at 3 (Madsen, J.) (although the trial court scheduled a "so-called 'resentencing' hearing," it later "ruled" that the hearing was not a resentencing hearing (citing *Kilgore*, 141 Wn. App. at 822)). By

14

timeliness. This is the only conclusion consistent with *Vasquez*, *Waller*, and the other authorities discussed above. Since the State waived the time bar argument, the Court of Appeals should have considered the merits of each party's sentencing arguments in both of Kelly's cases on appeal.

CONCLUSION

I would reverse the Court of Appeals in both of Kelly's cases. I would remand to the Court of Appeals to consider the merits of the sentencing arguments made in the May 2006 case. As to the November 2006 case, I agree with the Court of Appeals and the majority that the trial court lacked statutory authority to impose the firearm enhancements concurrently. But in that case, I would reverse the Court of Appeals' decision that on remand, the trial court is limited to adjusting the offender score and otherwise reimposing the original sentence. The Court of Appeals based that decision on its incorrect conclusion that Kelly's request for resentencing was time barred. Rather, since the State has conceded timeliness, *Vasquez* demands that Kelly is entitled to a new, de novo resentencing on remand.

I therefore respectfully dissent.

---

contrast, Kelly's resentencing hearing was a real resentencing hearing treated as such by the court—not a hearing "for argument about whether [the court] should actually set a resentencing hearing." *Waller*, 197 Wn.2d at 227.

15

Gordon McCloud, J.

González, C.J.

Montoya-Lewis, J.